**UNITED STATES, Appellant,**

v.

**Gregory N. PETERSON, 246 04 5002, Staff Sergeant (E–6), U.S. Marine Corps, Appellee.**

**Misc. Docket No. 85–05.**

U.S. Navy-Marine Corps Court of Military Review.

27 June 1985.

808

LT Charles M. Fresher, JAGC, USNR, Appellate Government Counsel.

MAJ Michael E. Canode, USMC, Appellate Defense Counsel.

LT Gary K. Van Meter, JAGC, USNR, Appellate Defense Counsel.

GLADIS, Senior Judge:

This case comes before us on appeal by the government pursuant to Article 62, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 862, and Rule for Court Martial (R.C.M.) 908, *Manual for Courts-Martial, 1984* (MCM). At the initial Article 39(a), 10 U.S.C. § 839(a) session, the military judge granted appellee's motion for appropriate relief requesting exclusion of two incidents of uncharged misconduct occurring prior to and subsequent to the incident from which the charges are drawn. The government had proposed that the evidence was admissible pursuant to Military Rule of Evidence (Mil.R.Evid.) 404(b) in order to prove modus operandi, common plan or design, motive, absence of mistake, or intent. The military judge's ruling excluding the evidence was based on his findings that the extrinsic offenses which the government sought to introduce were not sufficiently similar to the charged act for admission under Mil.R. Evid. 404(b), and that the prejudicial impact of the evidence substantially outweighed its probative value under Mil.R.Evid. 403. The government asserts, among other things, that the military judge erred as a matter of law when he failed to consider the admissibility of the extrinsic offenses for the purpose of proving the intent of the appellee, and when he applied too stringent a standard with respect to the degree of similarity required to be shown between the extrinsic offenses and the charged offense for the purpose of proving intent.

Appellee was charged with the rape, sodomy, and kidnapping of a Miss S.W. on 5 February 1984 in violation of, respectively, Articles 120, 125, and 134 of the UCMJ, 10 U.S.C. §§ 920, 925, 934. The alleged victim was expected to testify that at about 2200 that evening, while she was walking on base at Camp Pendleton, the appellee pulled up next to her in his automobile and offered her a ride into town (Oceanside, California). Although she did not know him, she accepted and entered the vehicle.

Rather than driving into town, however, the appellee drove to a deserted area on base and asked Miss S.W. to have sex with him. When she refused and attempted to flee, appellee beat her and threatened to kill her, and then raped and sodomized her. Before dropping her off, appellee told Miss S.W. that she would have to work for him as a prostitute.

The two extrinsic offenses which the government sought to introduce allegedly occurred on 3 February 1984 and on 8 April 1984. Both incidents involved women who were expected to testify that they were induced to enter appellee's vehicle, were prevented from leaving the vehicle against their will, were threatened, and were physically and sexually abused after the appellee transported them to relatively secluded areas. These two incidents were similar in a number of respects to the charged incident, but also differed in a number of particulars. We need not articulate these factual similarities and differences since we are limited in our consideration of this appeal to resolving matters of law only. R.C.M. 908(c)(2).

The defense motion for appropriate relief posited that the extrinsic evidence was inadmissible pursuant to Mil.R.Evid. 404 because it was being offered to prove that appellee was a bad character and that he acted in conformity therewith by committing the offenses alleged in the charges and specifications. Appellee also contended that such evidence was inadmissible pursuant to Mil.R.Evid. 403 in that its probative value was substantially outweighed by the danger of unfair prejudice and confusion of issues. The government bases its theory of admissibility, as stated above, on Mil.R.Evid. 404(b) which provides:

> *Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowl-

edge, identity, or absence of mistake or accident.

■■■ In his brief answering appellee's motion, and in oral argument on the motion, trial counsel urged that the extrinsic offenses were admissible for the purpose of proving *modus operandi,* common plan or design, motive, intent, and absence of mistake.[1] After considering the briefs and arguments of counsel, the military judge issued the following ruling:

Gentlemen, the motion for appropriate relief is granted in both cases. The court finds, in regard to the motion, by a preponderance of the evidence that *the details of the offenses involved do not rise to the level described in the various cases, as quoted by defense counsel to constitute being like a signature, or being strikingly similar or almost identical.*

*The court finds that the details of these offenses cannot clearly be said to be more than similar to the charged offenses and, certainly, not almost identical as to naturally suggest that all the acts were the result of the same plan.*

The court is aware of the language in the *Brannan* case [18 M.J. 181, 184–185 (C.M.A.1984)], which indicates that uncharged misconduct may be admissible to rebut the defense of lack of criminal intent; nevertheless, the motion is granted. *The court is not satisfied that there has been established or shown in the uncharged misconduct a method of operation or plan of such clarity* that would justify presenting this evidence to the members, given the inherent risks of undue prejudice. [emphasis added]. R. 41.

When defense counsel later asked him to restate the basis for his ruling, the military judge replied:

[T]he court found that *the similarities involved in the three alleged instances involving the four women ... were not sufficient to demonstrate an identity so as to naturally suggest that all the acts were the result of the same plan;* and given that fact, the court was further of the opinion or further found that to allow these instances of uncharged misconduct to go before the members would have a prejudicial impact that outweighed their probative value. [emphasis added]. R. 48.

Based on the above rulings and findings of the military judge, we find merit in appellant's argument that he failed to sufficiently consider the disputed evidence as proof of appellee's intent, and that he applied a standard of similarity which was too stringent and legally improper for the purpose of proving intent.

■■ Rule 404(b) reemphasizes the general rule that evidence of extrinsic offenses is not admissible to demonstrate an accused's bad character to prove that he has a propensity to commit crime. While evidence offered for such a purpose may be relevant, because a man of bad character is more likely to commit a crime than one of good character, the rule excludes it in recognition of its inherent prejudice. *See United States v. Beechum,* 582 F.2d 898, 910 (5th Cir.1978). Exclusion prevents a jury from punishing an accused for a past offense rather than for the charged offense. Thus, the probative value of the extrinsic offense is outweighed by its prejudicial effect in all cases where the evi-

---

**1.** We abhor the "shotgun" application of rule 404(b) and will not accept the "talismanic incantation" of the words motive, intent, plan or design, *modus operandi,* etc., with nothing more. *See United States v. Brannan,* 18 M.J. 181, 185 (C.M.A.1984); *see also United States v. Goodwin,* 492 F.2d 1141, 1155 (5th Cir.1974). Trial counsel should be prepared to articulate on the record the particular purpose or purposes for which the evidence is admissible, and why that evidence is important relative to other

evidence the government has available on that issue. *See Brannan, supra,* at 185. We wish to stress that rule 404(b) is not a method of surreptitiously contravening the rule prohibiting evidence of an accused's propensity to commit crime. It recognizes that there are valid, articulable reasons for the admission of extrinsic offense evidence, the probative value of which may, under certain circumstances, outweigh its inherent prejudicial effect.

dence is offered for the limited purpose of proving bad character.

 The rule also recognizes, however, that evidence of extrinsic offenses may be relevant for other purposes as well. The non-comprehensive list within the rule provides examples of these purposes. *See* MCM, Appendix 22 at A22–28 (1984); *United States v. Stokes,* 12 M.J. 229 (C.M.A. 1982); *United States v. Thomas,* 11 M.J. 388, 393 (C.M.A.1981); *United States v. Woodyard,* 16 M.J. 715, 719 (AFCMR 1983). Whether or not evidence of the extrinsic offense is admissible for any of these purposes is a function of the similarity of the extrinsic offense to the offense charged. *Beechum,* 582 F.2d at 911. The *degree* of similarity required is not constant but varies according to the purpose for which the evidence is offered. *Id.; see also* Stone, *The Rule of Exclusion of Similar Act Evidence,* 46 Harv.L.Rev. 954, 955

(1933). A higher degree of similarity between extrinsic and charged offense is required, for example, when the extrinsic offense is offered to prove *modus operandi* than when it is offered to prove motive.[2] The similarity requirement is less stringent for proving intent than it is for proving *modus operandi,* or common plan or scheme.[3]

In *United States v. Brannan,* 18 M.J. 181 (C.M.A.1984), the Court of Military Appeals addressed the admissibility of extrinsic offense evidence in light of Mil.R.Evid. 404(b) and 403. The Court employed a two-step analysis to determine admissibility under 404(b):

> The first step in addressing this question is to identify the evidence admitted at this court-martial that tended to show that appellant had engaged in other offenses involving marijuana.

. . . . .

**2.** In order to be admissible to prove *modus operandi,* the high degree of similarity of the extrinsic offense to the offense charged is the crucial consideration. The offenses must be so similar in physical characteristics as to constitute being like a signature marking the offenses as the handiwork of the accused. *Beechum, supra,* at 912 n. 15; *United States v. Rappaport,* 19 M.J. 708, 713 (AFCMR 1984); *United States v. Benedetto,* 571 F.2d 1246 (2d Cir.1978). This extremely close similarity is required because evidence of *modus operandi* is probative of the *identity* of an accused. *Rappaport,* 19 M.J. at 713; *Beechum* at 912 n. 15. In order to prove motive, however, the extrinsic offense may be completely disparate from the charged offense. The fact that an accused had assaulted and beaten another serviceman and was awaiting trial for that offense at the time of an alleged attempt to desert, for example, would be considered under 404(b) as evidence of motive in the prosecution for desertion. Likewise, if the accused is charged with falsification of his accounts, the fact that he stole some of the goods to be accounted for is evidence that he had a motive to falsify the accounts for the purpose of concealing the theft. ¶ 138g, *Manual for Courts-Martial, 1951.* Whether or not these extrinsic offenses are admissible would of course depend ultimately on the outcome of the balancing test required by Mil.R.Evid. 403.

**3.** "But where the conduct offered consists merely in the doing of other similar acts, it is obvious that something more is required than that mere similarity, which suffices for evidentiary intent ... The object here is not merely to negative

an innocent intent at the time of the act charged, but to prove a preexisting design, system, plan, or scheme, directed forwards to the doing of that act....

"The added element, then, must be, not merely a similarity in the results, but *such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations....*

"It will be seen that the difference between requiring *similarity,* for acts negativing innocent intent, and requiring *common features indicating common design,* for acts showing design, is a difference of degree rather than of kind; for to be similar involves having common features, and to have common features is merely to have a high degree of similarity....

"[T]he mere prior occurrence of an act similar in its gross features ... may suffice for that purpose [of negativing innocent intent]. But where the very act is the object of proof, and is desired to be inferred from a plan or system, the combination of common features that will suggest a common plan as their explanation involves so much higher a grade of similarity as to constitute a substantially new and distinct test." 2 Wigmore, *Evidence* § 304 (Chadbourne rev. 1979) (hereinafter cited as Wigmore) (original emphasis). *See also United States v. Brannan,* 18 M.J. 181, 184–185 (C.M.A.1984), *United States v. Woodyard,* 16 M.J. 715 (AFCMR 1983); *United States v. Radseck,* 718 F.2d 233, 236 (7th Cir.1983); *Beechum, supra,* at 911 n. 15; *United States v. Danzey,* 594 F.2d 905, 913 n. 6 (2d Cir.1979).

The second step in addressing the specified issue is to *identify the particular purposes* for which the government offered this evidence in appellant's court-martial.

*Id.* at 182–183 (emphasis added). The Court went on to recognize that the degree of similarity required was dependent upon identification of the particular purpose for which the extrinsic offense evidence was being offered.

■ In the instant case, the military judge erred as a matter of law when he failed to properly consider admission of the extrinsic offenses for the purpose of proving intent, as proffered by the trial counsel in his written brief and oral argument. While the military judge did state that he was aware of the *Brannan* case, *supra*, and its approval of the introduction of uncharged misconduct to prove criminal intent, he applied an incorrect similarity test with respect to admission of an extrinsic offense for that purpose. Correctly applying the "signature" test, in considering admissibility of the disputed evidence for the purpose of proving *modus operandi*, and the test requiring a high degree of similarity, with respect to the evidentiary purpose of common plan or design, the military judge erred when he apparently utilized these same tests in considering the admissibility of the extrinsic offenses for the purpose of proving intent.

■ The higher degree of similarity required for the two evidentiary purposes of *modus operandi* and common design or plan is not required for the purpose of proving intent. *Brannan,* 18 M.J. at 185. Where extrinsic offenses are introduced to show intent the degree of similarity is relevant only insofar as the acts are sufficient-

ly alike to support an inference of criminal intent. *United States v. Radseck,* 718 F.2d 233, 236 (7th Cir.1983). "[T]he mere prior occurrence of an act similar in its gross features—i.e., the same doer, and the same sort of act, but not necessarily the same mode of acting nor the same sufferer—may suffice for that purpose." Wigmore (*see* note 2, *supra.*) [4]

■ We reject appellee's contention that proof of intent was not admissible in the instant case because specific intent was not an essential element of the offenses charged. Appellee was charged with violations of Articles 120 (rape), 125 (sodomy), and 134 (kidnapping). We find, first of all, that kidnapping under Article 134 *does* contain the element of specific intent.[5] In explanation of the elements of the offense of kidnapping, ¶ 92c (4), MCM (1984) states: "*Willfully:* The accused must have *specifically intended* to hold the victim against the victim's will to be guilty of kidnapping. An accidental detention will not suffice." (emphasis added). That appellee's intent could potentially be at issue in the instant case is evidenced by the following colloquy between the military judge and assistant defense counsel at the Article 39(a) session:

MJ: Major S., I hate to ask you about your defense now, but I think it's important for purposes of the motion that the court know whether or not it is the intention of the defense to raise a lack of criminal intent as a defense in this case. Is it the intention of the defense to aver that the accused simply has no knowledge of these offenses, or that there was; what will be the theme of your defense?

> (2) That the accused then held such person against that person's will;
> (3) That the accused did so *willfully* and wrongfully; and
> (4) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.
> (emphasis added).

---

4. *See also United States v. Woodyard,* 16 M.J. at 718: "To be admissible on the issue of intent, evidence of other wrongs or acts need only be similar to the offense charged and not too remote therefrom."

5. ¶ 92*b,* MCM (1984) lists the following as the elements of kidnapping:
 (1) That the accused seized, confined, inveigled, decoyed, or carried away a certain person;

ADC: No, your Honor, that's not. The government's going to introduce evidence to show that they were together and that's not going to be denied. It's simply that the offenses never occurred. There was no intercourse; there was no sodomy. There was no carrying away with *against the will of Miss W*[___]. They did go off together ...

R. 36–37 (emphasis added). Thus, it appears that at that point in the trial, since defense was willing to concede that the appellee and the alleged victim "did go off together," that appellee might be relying on an "innocent intent" as a defense to the kidnapping charge, i.e., that any detention was accidental.[6] Moreover, while rape and sodomy are general intent crimes, this Court has previously adopted the position that whether or not an offense is labeled as a "general intent" crime or as a "specific intent" crime is simply not determinative of whether any disputed evidence should be admissible to prove intent. *See United States v. Vilches*, 17 M.J. 851 (NMCMR 1984). If *any* type of innocent intent is placed in issue by the defense, it is the negation of that "innocent intent," not only the "intent" found as an element of a "specific intent" crime, that makes proof of intent relevant through introduction of an extrinsic offense:

> [S]imilar acts are admitted to prove *intent* [original emphasis] on the basis that from the point of view of the doctrine of chances, the *element of innocence* is eliminated by multiplying instances of the same result. That is to say, 'similar results do not usually occur through abnormal causes'; and the recurrence of a similar result in the form of an unlawful act tends to negative accident, inadvertence, duress, good faith, self-defense, *or*

*other innocent mental state* and tends to establish to at least some extent the presence of criminal intent.

*United States v. Danzey*, 594 F.2d 905, 912 (2d Cir.1979) (quoting Wigmore, § 302 (*see* note 2, *supra* )) (emphasis added).

■■■■ We reject as well appellate defense counsel's assertion that evidence of extrinsic offenses must be plain, clear and conclusive, a requirement which was first enunciated by the Court of Military Appeals in *United States v. Janis*, 1 M.J. 395 (C.M.A.1976). The *Janis* prerequisites to admissibility of uncharged misconduct no longer apply. *See Brannan*, 18 M.J. at 182; and *United States v. Woodyard*, 16 M.J. 715, 718–720 (AFCMR 1983). There is no rigid limitation with respect to the quantum of proof required for admissibility of an extrinsic offense. The evidence must be sufficient, however, to permit the members to conclude that the accused in fact committed the extrinsic offense. If the members could not reasonably so conclude, the proof would be insufficient and inadmissible. *See Beechum*, 582 F.2d at 913.

■■■■ We now turn to the military judge's ruling that the evidence was not only inadmissible under 404(b) but also under the balancing test of 403. We recognize that the balancing of 403 factors is within the sound and broad discretion of the military judge. *Woodyard*, 16 M.J. at 721; *Beechum, supra; Cohn v. Papke*, 655 F.2d 191 (9th Cir.1981). It is essential, however, with respect to the 403 balancing test, that the probative value of the contested evidence be measured in light of the purposes for which it purports to be offered, and the need for that evidence in view of the contested issues and other evidence available to the government on those

---

6. Because of the difficulty of determining whether intent will be at issue, it has often been stated that it is usually preferable for the trial court to await the conclusion of the defense case before admitting similar act evidence. *See United States v. Adderly*, 529 F.2d 1178, 1182 (5th Cir.1976); *United States v. Danzey*, 594 F.2d 905, 912 (2d Cir.1979); *United States v. Leonard*, 524 F.2d 1076, 1092 (2d Cir.1975), *cert. denied*, 425 U.S. 958, 96 S.Ct. 1737, 48 L.Ed.2d 202

(1976); *United States v. Benedetto*, 571 F.2d 1246, 1249 (2d Cir.1978). This seems to us to be a prudent course of action when confronted with a situation, as in the case sub judice, where it is not clear whether innocent intent will be asserted. The court will best be able to measure the government's need for the evidence and to weigh its probative value against its prejudicial effect only after the defense has presented its case.

issues. *See Goodwin,* 492 F.2d at 1150; and *Beechum,* 582 F.2d at 916–917. If, as we have found above, the military judge did not give proper consideration to the disputed evidence for the purpose of proving intent under 404(b), *a fortiori* the probative value of the evidence for the purpose of proving intent was not properly weighed in the balancing under Mil.R.Evid. 403.

■ The decision of the military judge which granted the appellee's motion for appropriate relief excluding the evidence of extrinsic offenses was premature and is reversed. Any ultimate determination of *inadmissibility* cannot be made until the conclusion of the defense case. A determination of admissibility may be made prior to that time in the event that the matters on the basis of which the Government seeks to introduce the extrinsic evidence have been put in issue. Prior to this point the military judge will be unable to properly consider all matters determinative of the evidence's relevancy under 404(b), and to weigh all factors attendant to the balancing required by Mil.R.Evid. 403. The similarity test which must be utilized in the 404(b) analysis is that which is appropriate for the particular purpose or purposes for which the evidence is offered. In making his 403 analysis, the military judge should make clear on the record the competing interests involved in the balancing and the reasons for his rulings. *See United States v. Petrov,* 747 F.2d 824, 832 (2d Cir.1984).

The case is remanded to the military judge for reconsideration of the defense motion in light of this opinion.

Judge COUGHLIN and Judge CASSEL concur.