**UNITED STATES, Appellee,**

v.

**Staff Sergeant Glen D. BENDER, 130–44–3008, United States Army, Appellant.**

**ACMR 8802589.**

U.S. Army Court of Military Review.

25 April 1990.

---

For Appellant: Captain Patricia D. White, JAGC (argued); Captain Brian D. Bailey, JAGC (on brief).

For Appellee: Captain James K. Reed, JAGC (argued); Major Maria C. Fernandez, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Colonel Alfred F. Arquilla, JAGC (on brief).

Before MYERS, JOHNSON and NEURAUTER, Appellate Military Judges.

## OPINION OF THE COURT

MYERS, Senior Judge:

Contrary to his pleas, appellant was convicted by a military judge sitting as a general court-martial of indecent acts (two specifications) and obstruction of justice in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 (1982) [hereinafter UCMJ]. The convening authority approved the adjudged sentence of a dishonorable discharge, confinement for twelve years, and reduction to Private E1.

In this appeal, appellant urges three assignments of error, each alleging that the military judge erred in admitting evidence of certain acts of uncharged misconduct into evidence under Manual for Courts–Martial, United States, 1984 [hereinafter Manual or MCM, 1984], Mil.R.Evid. [hereinafter Mil.R.Evid.] 404(b).

Mil.R.Evid. 404(b) provides that:

Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The Court of Military Appeals has set out a three-step analysis for determining whether evidence of extrinsic acts is properly admissible under Mil.R.Evid. 404(b),[1] to wit:

a. Does the evidence reasonably support a finding by the court members that appellant committed prior crimes, wrongs or acts? *United States v. Mirandes–Gonzalez,* 26 M.J. 411 (C.M.A.1988).

b. What is the purpose for which the evidence is offered? That is, to be relevant and admissible, it must relate directly to some specific "fact that is of consequence" to the action which is made more or less probable by the existence of this evidence, other than to show that the accused is predisposed to commit crime. Mil.R.Evid. 401; *United States v. Ferguson,* 28 M.J. 104, 108 (C.M.A.1989).

c. Is the "probative value ... substantially outweighed by the danger of unfair prejudice"? Mil.R.Evid. 403; S. Saltzburg, L. Schinasi, D. Schleuter, *Military Rules of Evidence Manual* 362 (2d ed. 1986 & 1988 Supp.).

*See United States v. Reynolds,* 29 M.J. 105, 109 (C.M.A.1989). If the evidence fails

to meet any of these standards, it is inadmissible. *Id. See also United States v. White,* 23 M.J. 84 (C.M.A.1986); *United States v. Brannan,* 18 M.J. 181 (C.M.A. 1984).

Regarding the first standard, the Court of Military Appeals has noted that the threshold is now very low as to the admissibility of other misconduct. *United States v. Castillo,* 29 M.J. 145, 151 (C.M.A.1989). The military judge must admit the evidence "if he concludes that the factfinder could reasonably find by a preponderance of the evidence that the misconduct had occurred, even though the judge himself would not make such a finding." *Id.*

As to the second standard, that is, the relationship between the charged and extrinsic offenses, whether evidence of an extrinsic offense is admissible under Mil.R. Evid. 404(b) is a "function of the similarity of the extrinsic offense to the offense charged." *United States v. Peterson,* 20 M.J. 806, 811 (N.M.C.M.R.1985). The degree of required similarity "is not constant but varies according to the purpose for which the evidence is offered." *Id.* For example, "the similarity requirement is less stringent for proving intent than it is for proving ... common plan or scheme." *Id. See also Brannan,* 18 M.J. at 185.

To be relevant for purposes of showing a common plan or scheme, the evidence must show "common features indicating common design" as between the charged and extrinsic offenses. *Peterson,* 20 M.J. at 811. The common features must be sufficient to show an identity so as to suggest that all of the acts were the result of the same plan. *Id.* at 810. However, when extrinsic offenses are introduced to show intent, "the degree of similarity is relevant only insofar as the acts are sufficiently alike to support an inference of criminal intent." *Id.* at 812; *United States v. Merriweather,* 22 M.J. 657, 663 n. 4 (A.C.M.R.1986).[2] The Court of Military Appeals has held that "to

---

1. Mil.R.Evid. 404(b) only applies to evidence sought to be admitted during findings. The related standard of MCM, 1984, Rule for Courts–Martial 1001(b)(4) governs the admission of such evidence on sentencing. *United States v. Mullens,* 29 M.J. 398, 400 (C.M.A.1990).

2. It is not determinative of admissibility of the extrinsic offense that the charged offense "is labeled as a 'general intent' or as a 'specific intent' crime." *Peterson,* 20 M.J. at 813.

be admissible to prove modus operandi, a high degree of similarity between the extrinsic offense and the charged offense is required. The offense must be so similar in physical characteristics as to constitute being like a signature marking the offense as 'the handiwork of the accused.' " *United States v. Gamble*, 27 M.J. 298, 305 (C.M.A.1988) (citations omitted).

With regard to the third element of the *Reynolds* test, the Court of Military Appeals has noted that the lessened threshold for admissibility under the first part of the test requires more emphasis to be placed on the evaluation of the evidence (for undue prejudice) under Mil.R.Evid. 403. *Castillo*, 29 M.J. at 151.

I

■ In Prosecution Exhibit (PE) 10, a sworn statement dated 30 April 1984,[3] appellant admitted to fondling his six-year old daughter C's breasts and vagina approximately twice a month for the previous four or five years, masturbating in her presence, and having engaged in oral sex with her. *Id.* On 15 May 1984, appellant rendered another sworn statement in which he admitted to engaging in oral sex with C on or about 15 April 1984 (PE 11).

During an Article 39(a), UCMJ, session held on 6 October 1988, in ruling on a Government motion *in limine* the military judge found both statements to be admissible under Mil.R.Evid. 404(b) to show intent, noting that:

(a) the government must prove specific intent to gratify his sexual desires, and in 1984, the accused confessed to obtaining sexual gratification from fondling his daughter's breasts and vagina; (b) the fondling acts charged are identical to the fondling acts in 1984; (c) the victim is the same; and (d) the offenses occurred in the same manner.

References to oral sodomy in those documents were redacted, however, pursuant to defense objection.

At an Article 39(a), UCMJ, session held on 4 November 1988, the military judge made the following comments with regard to those statements:

In preparation of my rulings today, I've revisited my rulings concerning the confessions at the previous 39(a) session. My ruling was that they were admissible to show intent. I find now, that though it has some bearing on intent to gratify his sexual desires, it is also admissible to establish motive. Or they are admissible for that purpose. In that in the confession, the accused admits that he fondled his daughter about twice a month, that he had been—he began doing this when the child was 1 or 2 years old, and he admits that he engaged—he admits that he obtained sexual gratification from these encounters. And these statements establish that the accused maintained a perverse desire for his daughter over a period of 4 to 5 years. And the evidence is relevant to show that he still had this desire when he committed the acts in 1987.

(R. 86–87). Although trial counsel mentioned the statements in his closing argument, the military judge made no comment on them during the findings phase of appellant's court-martial.

We find that the military judge in this case properly applied the relevant case law in determining that the two statements were admissible under Mil.R.Evid. 404(b) with regard to intent. The military judge's findings with regard to motive, however, warrant further analysis.

■ "Motive is that which incites or stimulates a person to do an act," and as such, "it is a state of mind tending to show the basis for that individual's behavior." *United States v. Lips*, 22 M.J. 679, 682 (A.F.C.M.R.1986), *pet. denied*, 24 M.J. 45 (C.M.A.1987). Evidence of extrinsic acts is admissible under Mil.R.Evid. 404(b) to show motive, but only when it is alleged that the uncharged act is or gives rise to the cause and the charged act is the effect. *See United States v. Watkins*, 21 M.J. 224 (C.M.A.), *cert. denied*, 476 U.S. 1108, 106

---

**3.** Appellant was tried on 6 October and 4, 8, 9, and 10 November 1988 for offenses allegedly committed in September 1987 and September 1988.

S.Ct. 1956, 90 L.Ed.2d 364 (1986) (evidence of motive is relevant to show the doing of an act by a person as an outlet for that motive); Myers, *Uncharged Misconduct in Child Abuse Litigation*, 1988 Utah L.Rev. 479, 503–07 (1988). Appellant correctly points out that the previous indecent acts cannot by themselves be considered the causal agents of the charged offenses, but in making this argument appellant fails to consider the unusual nature of the specific intent requirement of the offense of indecent acts with a child. The Manual provides that the elements of that offense include "[t]hat the accused committed the act with intent to arouse, appeal to, or gratify the lust, passions, or sexual desires of the accused, the victim, or both[.]" MCM, 1984, Part IV, para. 87b(1)(d). Thus, unlike other offenses, the motive behind the commission of the offense of indecent acts with a child will frequently, as in this case, be identical with the *mens rea* requirement for the offense. Accordingly, while it may have been surplusage for the military judge to address the issue of motive under these circumstances, we find no prejudicial error resulted to appellant's case. *See United States v. Kinman*, 25 M.J. 99, 100–101 (C.M.A.1987).

## II

■ Trial counsel also moved *in limine* to determine the admissibility of the testimony of M.A., who was allegedly molested by appellant while her family was visiting appellant's family. The military judge granted the government's motion, finding M.A.'s testimony to be admissible as to appellant's intent, motive, and common plan or scheme in molesting C and M.A. The military judge, citing *United States v. Cuellar*, 27 M.J. 50 (1988), also found M.A.'s testimony to be relevant "because it tend[ed] to establish the victim's credibility, which is, I understand in this case is to be an issue" (R. 85).

This colloquy between the trial counsel and the military judge then followed:

TC: Your Honor, I would request that you make specific findings as to the probative value of [M.A.]'s testimony for the record.

MJ: It appears that the crucial contested issue in the case is the victim's credibility. The victim appears to be the only person that can establish the charged crime. And [M.A.]'s testimony corroborates the victim's charges. Additionally, [M.A.]'s testimony confirms the method that the accused used to sexually abuse his daughter, and [M.A.]'s testimony is critical on that point and the point of the victim's credibility. Further, the similarity between the charged crimes and the prior acts involving [M.A.] increase the probity of the evidence. Finally, the proximity between the charged crimes and the prior crimes is close.

(R. 88–89).

On direct, M.A. testified that appellant had begun sexually molesting her in 1980 when she was eight years old. While she was sleeping in C's bedroom with C one night, appellant came into the room, lifted M.A.'s nightgown, touched her breasts, and kissed her torso from her neck down to her navel. Later, when her family was staying with the Benders again in 1982, appellant again came into the room in which M.A. was sleeping and touched her breasts. Approximately one year later, M.A.'s family again stayed over at the Benders' house. During the night while M.A. was sleeping in C's room with C, appellant came into the room and again lifted up M.A.'s nightgown and fondled her breasts and began rubbed his hand along her leg. M.A. awoke and appellant threatened to hurt her, her mother, C, and Mrs. Bender if she told anyone. M.A. further testified that in 1985 the Benders came to visit her family. While she and C were asleep in M.A.'s bed, appellant came into the room, lifted up M.A.'s nightgown, and began feeling her breasts. Appellant again kissed her from the neck down to her navel, and rubbed the outside of her legs. Appellant committed similar acts upon M.A. when the families visited together later that year. In March, 1987 appellant, on the pretense of giving M.A. a back massage because she did not feel well, unfastened her bra and began feeling her breasts. After a while appellant refas-

tened her bra, whereupon M.A. ran to a neighbor's house where she stayed until her parents came to pick her up and take her home.

 We find that the military judge properly allowed the admission of this evidence on the issue of intent under Mil.R. Evid. 404(b). Likewise, the consideration of this evidence with regard to motive does not appear to be improper. As discussed above, the unique nature of the *mens rea* element of the offense of indecent acts with a child renders harmless any error flowing from the military judge's consideration of this evidence as to motive. However, we find the military judge's consideration of this evidence as directly bearing on the victim's credibility to be improper. *See* Mil.R.Evid. 608. Nonetheless, in light of the overwhelming evidence of appellant's guilt and the military judge's consideration of the evidence for proper purposes, appellant was not prejudiced by this error.

### III

 The obstruction of justice charge of which appellant was convicted arose out of an anonymous letter received by appellant's wife which sought to discourage her from testifying against appellant. By motion *in limine*, the Government litigated the admissibility of the testimony of Mrs. Bender and a neighbor, Mrs. J. After hearing the proffered testimony, the military judge ruled:

MJ: I find this evidence also admissible for the purposes of establishing motive. It is proffered that through the testimony of Mrs. Bender and Ms. [J], the Government would produce evidence the accused was motivated to hinder his prosecution, being charged by the United States for the identical acts for which he was being charged by the state of North Carolina. And the fact that he thwarted the state's case in January 1988, reflects his motive for attempting to thwart the United States' case in 1988. And I also find this admissible on the issue of identity, considering that the charged obstruction of justice involves two anonymous letters.

TC: Your Honor, if I could let the record reflect that it involves one anonymous letter.

\* \* \* \* \* \*

MJ: All right. In applying Military Rule of Evidence 403 balancing test as to the aforementioned evidence, I find the evidence has great probative value, which outweighs the prejudice.

(R. 85–86).

Mrs. Bender testified on direct examination that in January 1988 while she and her children were still living in North Carolina, appellant was facing civilian charges for his sexual abuse of C. On 29 January 1988, Mrs. Bender was approached by a Ms. D, a family friend, and informed that civilian authorities were about to serve a subpoena upon Mrs. Bender to appear at appellant's trial. Ms. D informed Mrs. Bender that she and appellant would provide Mrs. Bender with money and transportation to leave the state. Thereafter, Ms. D and Mrs. Bender drove to Ms. D's house where they met appellant, who had arranged to rent a U–Haul trailer for Mrs. Bender's belongings. Mrs. Bender and her children then stayed with another family that night, and the next morning Ms. D came by with Mrs. Bender's belongings packed and loaded in the U–Haul. Ms. D then gave Mrs. Bender $310.00 in cash, whereupon Mrs. Bender and her children departed North Carolina enroute to Rhode Island.

Mrs. Bender further testified that in September 1988 she received the anonymous letter which warned her not to come back to North Carolina to testify, that she would no longer receive her allotment from appellant, that the prosecutors were not serious about trying the case, and that the prosecutors would maltreat her. Mrs. Bender testified that at the time she received the letter, both she and C intended to testify at appellant's court-martial. A government expert witness testified that a typewritten exemplar prepared by appellant from the witness' dictation of the letter to appellant included four words misspelled the same way, and three words misspelled differently, as compared to the anonymous letter.

Mrs. J, Mrs. Bender's neighbor, testified that she saw appellant and Ms. D moving Mrs. Bender's personal belongings out of the Benders' house and into a U–Haul trailer on 29 January 1988. When she questioned appellant as to what he was doing, he told her that they were moving Mrs. Bender out to avoid having her subpoenaed. The next day, appellant called Mrs. J and told her "to remember that [she] didn't see anything or hear anything, and that [she] didn't see who moved Mrs. Bender out of the house" (R. 258). Mrs. J testified that appellant told her to keep quiet because Mrs. Bender was going to be subpoenaed. Later, when Ms. Currin, a local official, called Mrs. J and inquired as to Mrs. Bender's whereabouts, appellant advised Mrs. J not to give Ms. Currin any information.

With respect to the tendency of the extrinsic offense to show a motive, and therefore an identity, behind the anonymous letter, we find the military judge properly allowed the testimony at issue into evidence. Mrs. Bender's and Mrs. J's testimony detailed appellant's efforts to have Mrs. Bender leave North Carolina to avoid being subpoenaed, as well as his attempts to conceal the extent of his activities and Mrs. Bender's whereabouts. Appellant's success in this regard could have provided ample motivation to write the anonymous letter, especially since both the civilian and military investigations against appellant concerned the same offenses. *See United States v. Ellis*, ACM 27344, 1989 WL 79919 (A.F.C.M.R. 8 May 1989) (unpub.) (evidence of administrative actions taken against appellant admissible in showing motive behind exculpatory anonymous letter denying appellant's blame for extrinsic offenses which led to the administrative actions).

## IV

As the United States Court of Military Appeals has recently noted, the admissibility of evidence under Mil.R.Evid. 404(b) is not only extensively litigated at courts-martial, but is frequently at issue in cases before the appellate military courts as well. *Reynolds*, 29 M.J. at 108–109. As this case demonstrates, the appropriate application of Mil.R.Evid. 404(b) is often complicated when extrinsic evidence is offered under one of the listed purposes of that rule to help prove another of the listed purposes. Such "bootstrapping," while permissible under appropriate circumstances, *see id.* at 109–110, may present the military judge with a tangled knot of evidentiary considerations that will require patient analysis to unravel. The temptation exists at trial, we suspect, to resolve such problems in an Alexandrian fashion; namely, offering and admitting the extrinsic acts for every purpose under Mil.R.Evid. 404(b) for which a valid argument can be made. Mindful of the difficulties that use of Mil.R.Evid. 404(b) involves, and appreciative of the efforts of the military judge in this case to apply Mil.R.Evid. 404(b) properly, we nonetheless caution trial counsel and military judges to be precise in their reasoning as to the admissibility of such evidence.

The findings of guilty and the sentence are affirmed.

Judge JOHNSON and Judge NEURAUTER concur.