**UNITED STATES, Appellee,**

v.

**Edward J. JANIS, Sergeant, U. S. Army, Appellant.**

**No. 30,686.**

U. S. Court of Military Appeals.

April 16, 1976.

*Captain Donald R. Jensen* argued the cause for Appellant, Accused. With him on the brief were *Colonel Alton H. Harvey* and *Captain Michael R. Caryl.*

*Captain Nancy M. Giorno* argued the cause for Appellee, United States. With her on the brief were *Lieutenant Colonel Donald W. Hansen, Major John T. Sher-*

---

*wood, Jr., Captain John R. Erck,* and *Captain Jonathan D. Glidden.*

## OPINION OF THE COURT

PER CURIAM:

Realizing that his 3-month old son, Steven, was having difficulty breathing, Sergeant Janis drove him to the U.S. Army Hospital at Fort Polk, Louisiana. After undergoing emergency treatment, the infant was air-evacuated to Brooke Army Medical Center where he died 3 days later. An autopsy established the cause of death to be a traumatic subdural hemorrhage. Because Sergeant Janis' 11-month-old child, Edward, also died under somewhat similar circumstances 3 years before, medical authorities suspected child abuse and referred the matter to military criminal investigators.

Two weeks after Steven's death, the accused was interviewed by Agent Howell who secured a voluntary statement from him after preliminary advice as to the nature of the suspected offense as well as his rights concerning counsel and self-incrimination. In the statement, Sergeant Janis acknowledged responsibility for the deaths of both of his sons:

> I want you to know that I have a very violent temper. In my own mind, I think that I killed Edward. . . . I struck my son Edward a hard blow, I think to the left side of the head. I hit him with about the same force I would an adult. . . . He was sitting up at the time and I hit with such force that he almost flipped over. About a week or so later, Edward fell off the bed, and I picked him up and shook him very hard. He quit breathing and we had him transported to the emergency room. . . .
>
> .    .    .    .    .
>
> About two or three days before I took Steven to the hospital, I had just finished feeding him, and he wouldn't quit crying.

> My temper got a hold of me again and I squeezed his head violently with my right hand, like I would grab an adult and squeeze him if I was mad at him.

Asked if there was any other cause to which he would attribute the deaths of his two children, Sergeant Janis replied, "Steven, no; Edward used to bump his head a lot as babies will. I don't think that caused his death. In my mind I am responsible for the death of both the boys."

Sergeant Janis was subsequently tried by general court-martial for the unpremeditated murder of his son, Steven. To establish the intent element of the offense, the prosecution offered the accused's pretrial statement in addition to the autopsy report and death certificate relating to his son, Edward. Asserting that so much of the confession as pertained to Edward as well as Edward's autopsy report and death certificate constituted inadmissible uncharged misconduct, the trial defense counsel objected to the introduction of the proffered evidence.[1] In overruling the defense objection and admitting the evidence, the trial judge advised the jury that the exhibits could be "considered only for the limited purpose for which they were admitted as bearing on the accused's knowledge of the dangers inherent to young children due to their fragility, or perhaps 'frailty' would be a better word, and for such bearing as you may find it to have upon the intent to kill or inflict great bodily harm required for proof of unpremeditated murder."

Military practice follows the general rule that[2]

> evidence of other offenses or acts of misconduct of the accused is not admissible as tending to prove his guilt, for ordinarily this evidence would be useful only for the purpose of raising an inference that the accused has a disposition to do acts of the kind charged or criminal acts in general.

.    .    .    .    .

There are, however, seven exceptions to the general rule which permit introduction of uncharged misconduct: (1) when it tends to

---

1. The defense counsel objected to the confession on other grounds which are not pertinent to our resolution of the granted issue.

2. Paragraph 138g, Manual for Courts-Martial, United States, 1969 (Rev); *accord, United States v. Yerger,* 1 U.S.C.M.A. 288, 3 C.M.R. 22 (1952).

identify the accused as the perpetrator of the offense charged, (2) when it tends to prove a plan or design of the accused, (3) when it tends to prove knowledge or guilty intent in a case in which these matters are in issue, (4) when it tends to show the accused's consciousness of guilt of the offense charged, (5) when it tends to prove motive, (6) when it tends to rebut a contention, express or implied, made by the accused that his participation in the offense charged was the result of accident or mistake or was the result of entrapment, or (7) when it tends to rebut any issue raised by the defense, unless its sole purpose is to rebut evidence of the accused's good character. Paragraph 138*g*, Manual for Courts-Martial, United States, 1969 (Rev). We are satisfied from the evidence of record that the circumstances surrounding the death of Edward were relevant in resolving the accused's intent with respect to the charged homicide involving Steven. Applicability of an uncharged misconduct exception does not, however, end the inquiry. Three additional prerequisites must be satisfied before such evidence qualifies for admission.

First, there must exist a nexus in time, place, and circumstance between the offense charged and the uncharged misconduct sought to be introduced. As we observed in *United States v. Kelley*, 7 U.S.C. M.A. 584, 589, 23 C.M.R. 48, 53 (1957):

> It is clear that before a similar offense can be used, there must be a reasonably close connection in point of time as well as a "definite relationship to one of the elements of the offense charged."

As related by the accused in his confession, the circumstances surrounding the deaths of the two infants were substantially similar, both being precipitated by the accused's violent temper. In addition, we are satisfied that the 3-year interval between the two incidents did not render the evidence too remote or otherwise lessen its probative value. *Robinson v. United States*, 317 A.2d 508 (D.C.App.1974); *cf. United States v. Weaver*, 23 U.S.C.M.A. 445, 50 C.M.R. 464, 1 M.J. 111 (1975).

Both counsel agree that evidence of uncharged misconduct must also be "plain, clear, and conclusive" to be admissible. *See Kraft v. United States*, 238 F.2d 794, 802 (8th Cir. 1956); *cf. United States v. Hill*, 9 U.S.C.M.A. 10, 25 C.M.R. 272 (1958); *United States v. Kelley, supra*. The revelations contained in the accused's confession leave little doubt that he was directly responsible for the death of his son, Edward. Consequently, we find the evidence sufficiently persuasive to warrant its admission.

The third prerequisite which must be satisfied before evidence of uncharged misconduct properly may be considered by the triers of fact is whether the integrity and fairness of the trial process dictates that the evidence be excluded because its potential prejudicial impact far outweighs its probative value. *Cf. United States v. Thomas*, 6 U.S.C.M.A. 92, 19 C.M.R. 218 (1955); Fed.R.Ev. 403. Although the admitted evidence certainly was damaging to the accused, nothing of an inflammatory nature in the proffered exhibits exists to justify its exclusion. On balance, we find no abuse of discretion by the trial judge.

The decision of the United States Army Court of Military Review is affirmed.

Judge PERRY did not participate in the decision of this case.