UNITED STATES

v.

Napoleon O. VILCHES, 278 54 3044, Lieutenant Commander (O–4), U.S. Navy.

NMCM 83 0993.

U.S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 27 Oct. 1982.

Decided 31 Jan. 1984.

852

LCDR Claude P. Goddard, JAGC, USN, Appellate Defense Counsel.

Merlin H. Staring, Esq., Civilian Defense Counsel.

CDR Richard A. Monteith, JAGC, USN, Appellate Government Counsel.

Before GORMLEY, Senior Judge, and KERCHEVAL and LECORNU, JJ.

GORMLEY, Senior Judge:

Appellant, a U.S. Navy medical officer, was convicted contrary to his pleas at a general court-martial, composed of officer members, of non-consensual sodomy, indecent assault, and wrongful fraternization in violation of Articles 125, 134 and 133, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 925, 934, 933. The common denominator in all three charges, both as a victim and as a participant in fraterniza-

tion, was Marine Corps Private Martin Hirsch. The members sentenced appellant to a dismissal from the Naval Service and total forfeitures. The convening authority approved the findings and sentence as adjudged. Appellant assigns seven errors on appeal to this Court. We find all assigned errors without merit. The following assignments, however, warrant discussion:

## I.

PREJUDICIAL ERROR OCCURRED WHEN THE MILITARY JUDGE ALLOWED TESTIMONY OF PRIOR UNCHARGED MISCONDUCT TO BE PRESENTED TO THE MEMBERS AND SUCH EVIDENCE WAS INADMISSIBLE UNDER MIL.R.EVID. 406b: and

## VII.

PREJUDICIAL ERROR OCCURRED WHEN, WITH THE EVIDENCE IN A PRECARIOUS STANCE, THE TRIAL COUNSEL PRESENTED ARGUMENT WHICH MISSTATED THE EVIDENCE, MISLED THE COURT MEMBERS AS TO THE INFERENCE THEY MIGHT DRAW FROM THE EVIDENCE, CONVEYED HIS PERSONAL BELIEF AND OPINION AS TO THE TRUTH OR FALSITY OF EVIDENCE AND AS TO THE GUILT OF THE ACCUSED, ENGAGED IN EXTENSIVE ARGUMENT CALCULATED TO INFLAME THE PASSIONS AND PREJUDICES OF THE COURT MEMBERS, INJECTED ISSUES BROADER THAN THE GUILT OR INNOCENCE OF THE ACCUSED, AND MADE PREDICTIONS CONCERNING THE CONSEQUENCES OF THE COURT'S VERDICT.

[1] After appellant's civilian counsel rested his case, the government counsel offered in rebuttal to appellant's testimony the testimony of former Marine Corps Private Billy Barnes. The substance of the latter's testimony was that approximately 4½ years earlier appellant had befriended him and thereafter committed a non-consensual act of sodomy upon him. The government offered separate grounds for admission of this evidence. As to the charges of non-consensual sodomy and indecent assault, it argued that appellant "has testified on the stand that his plan or his intent was a plan of compassion and it is the government's theory that it was a plan of seduction." As to the charge of wrongful fraternization, the government contended that the nature of appellant's relationship with Barnes and the admonitory counselling he subsequently received were relevant to show that he knew that his activities with Private Hirsch constituted wrongful fraternization. Both of the government's bases for admission were posited upon MIL.R.EVID. 404(b), which provides:

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In addition, the government relied upon *United States v. Janis,* 1 M.J. 395 (C.M.A. 1976), which establishes the following standards for admission of prior acts of sexual misconduct: (1) there must be a nexus in time, place and circumstances between the offense charged and the uncharged misconduct sought to be introduced; (2) evidence of the uncharged misconduct must be "plain, clear and conclusive" to be admissible; and (3) the prejudicial impact of the uncharged misconduct must not outweigh its probative value.

Under the first standard of *Janis,* we find the following similarities between the prior Barnes incident and the instant offenses: (1) the victim was a young, enlisted Marine; (2) who was befriended by appellant; (3) who became highly intoxicated in the presence of appellant; (4) who was alone with appellant at appellant's quarters; and (5) who alleges that appellant overcame his will, fondled his genitals, and committed oral sodomy upon him. The common coercive element in both instances was not the abuse of a physician-patient relationship,

but rather the tacit coercion inherent in an unduly familiar association between an officer and a junior enlisted man.

In *Janis,* the interval between incidents was 3 years. In the instant case, the strong similarity between the two incidents overcomes any objection based upon the time interval of 4½ years. Few generalizations can be made based solely upon the lapse of time, and they are ordinarily directed to the weight of the evidence and not its admission. The general tendency of modern courts, however, is to be liberal in admitting evidence of collateral crimes in prosecutions for sexual offenses. *See generally* Annot., 88 A.L.R.3d 8 (1978) (Citing admissible intervals up to 10 years).

Under the second standard of *Janis,* we find that Barnes' testimony was sufficiently plain, clear and conclusive to be admissible as competent evidence of appellant's prior acts of sexual misconduct. At the time of appellant's trial, Barnes was out of the service and had taken time off from a civilian job to testify. His testimony was forthright and candid. On cross-examination, the civilian defense counsel thoroughly explored Barnes' possible motives to misrepresent his testimony, including, for example, his failure to report appellant until questioned by the Naval Investigative Service concerning drug involvement. Barnes also freely admitted to several instances of consensual sodomy with appellant subsequent to the non-consensual incident. Notwithstanding these admissions, Barnes' account of his relationship with appellant was, and is, credible. Moreover, other than a general denial of the allegation by appellant, there is no evidence which materially detracts from Barnes' testimony.

Under the final *Janis* standard, we find that the evidence of appellant's uncharged prior sexual misconduct was not so prejudicial as to outweigh its probative value. The instant case was essentially a swearing contest between the alleged victim, Hirsch, and appellant, as to the commission of a non-consensual homosexual act. Whether appellant possessed a deviate sexual attitude is a real issue in the case. Balancing the risk of prejudice against the probative value of evidence bearing on this issue was a matter within the sound discretion of the military judge. There was, in our view, more than adequate information before the court to permit the judge to strike the proper balance. Absent a showing of abuse of discretion, we are not inclined to disturb his ruling and we find no such abuse. Moreover, we note that the military judge correctly instructed the members as to the limited purpose for which this evidence was admitted.

Wholly apart from the question of admissibility under *Janis,* appellant challenges the relevancy of the Barnes evidence. He asserts that because sodomy is a general intent offense, evidence of prior sexual misconduct should not have been presented to the members and identified by the military judge as evidence that appellant "intended to become involved in a homosexual relationship" with Private Hirsch. We reject this contention.

All crimes, other than those to which strict liability attaches, require a showing of some degree of culpability, whether denominated as knowledge, intent, recklessness or willfulness. *United States v. Adderly,* 529 F.2d 1178, 1181 (5th Cir. 1976). *See* 2 J. Wigmore, Evidence § 307 (Chadbourn rev. 1979). As a general rule, "intent" evidence for specific intent offenses is necessary to discern the actor's state of mind so that an objective observer can distinguish between legal and illegal conduct. Surrounding circumstances, including prior similar acts, must be examined to determine if the act in question was performed with the requisite statutory criminal intent. In the military, there is no situation in which homosexual sodomy can be viewed as a legal act, absent an affirmative defense such as duress. In other words, an objective observer can conclude that a crime has been committed without reference to any other extrinsic factors.

In the face of a general denial of an allegation of non-consensual sodomy, it is proper to admit prior acts of similar sexual misconduct to show that an accused

had the proclivity to commit sodomy with anyone (not just the instant victim) he encountered in like circumstances. As outlined in our discussion of the first *Janis* standard, the circumstances surrounding the Barnes incident were strikingly similar to those of the charged offenses. The evidence of the former was clearly relevant to proof of the latter.

■ We are not unmindful that use of evidence of prior sexual misconduct must be scrupulously limited to the specific purpose for which admitted. It cannot be used to obtain a conviction based on a showing of general bad character or in the case of a non-consensual sodomy charge a showing of general homosexual preference. In the instant case, the government counsel properly limited his direct examination of Barnes to the events surrounding the non-consensual sodomy committed by appellant. It was the civilian defense counsel, on cross-examination of Barnes, who chose to put before the members the subsequent consensual homosexual encounters between Barnes and appellant. This was obviously a tactical decision by counsel to impeach Barnes' characterization of the first homosexual liaison with appellant as non-consensual. This evidence, if introduced by the government, would have been so prejudicial as to warrant corrective action. Any prejudice which may have emanated from the government's direct examination of Barnes pales in comparison to the prejudice emanating from the cross-examination by the civilian defense counsel which tended to fix within the member's minds the notion that appellant was a homosexual, and therefore, likely to commit a homosexual act, consensual or non-consensual. Only after his cross-examination before the members did the civilian defense counsel move for a mistrial on the grounds that uncharged sexual misconduct was improperly placed before the members. He properly preserved for appeal the matters elicited by the government counsel on direct examination. He cannot preserve for appeal, however, an error of his own manufacture.

The remaining assignment of error is a broadside attack on the government counsel's arguments prior to findings. We reject the assignment, but will address the contention that the government counsel's remarks were unduly inflammatory and materially prejudicial. His arguments span over 25 pages of the record. At several points during his argument, the government counsel referred to appellant as a "pervert" and a "closet homosexual" and metaphorized him as a "chickenhawk".

> The imputation of homosexuality to a criminal accused invariably tends to disparage him in the eyes of the jurors, who will normally be heterosexual (and) the status of the trial record prior to the reference is crucial to determine if reference is fair comment upon the record.

Annot., 54 A.L.R.3d 897, 900 (1973).

■ In our view, the status of the record at the time of the government counsel's argument was such that references to appellant's homosexuality were unavoidable. The government introduced evidence during its case-in-chief and during rebuttal which if believed unmistakably demonstrated that appellant had participated in homosexual acts. Moreover, the civilian defense counsel, through cross-examination of Barnes, firmly established appellant's general homosexual preference. Although the government counsel's choice of words could be viewed as inartful and rather pedestrian, we cannot say within the context of the entire argument, that he went beyond the bounds of fair comment or warranted a *sua sponte* interruption and instruction by the military judge. *See United States v. Shamburger,* 1 M.J. 377, 379 (C.M.A.1976). Finally, the civilian defense counsel's failure to object at trial convinces us not only of the minimal impact of the remarks upon the members, but also that the issue has been waived. *United States v. Doctor,* 7 U.S.C. M.A. 126, 21 C.M.R. 252 (1956). Accordingly, we find this assignment of error to be without merit.

Within the record of trial we find no prejudice to any of the substantial rights of

856

appellant. We affirm the findings and sentence as approved on review below.

Judge KERCHEVAL and Judge LECOR-NU concur.