UNITED STATES, Appellee,

v.

Cristobal G. CUELLAR, Intelligence Specialist Second Class, U.S. Navy, Appellant.

No. 55,405.
NMCM 85 1337.

U.S. Court of Military Appeals.

Sept. 28, 1988.

As Amended March 28, 1989.

For Appellant: *Lieutenant Teresa A. McPalmer*, JAGC, USNR (argued); *Lieutenant Commander James J. Quigley*, JAGC, USN (on brief); *Commander Frederick N. Ottie*, JAGC, USN.

For Appellee: *Major Laura L. Scudder*, USMC (argued); *Captain Wendell A. Kjos, JAGC*, USN (on brief); *Captain Carl*

*H. Horst,* JAGC, USN, *Commander Michael P. Green,* JAGC, USN, *Lieutenant W. A. Durling,* JAGC, USNR.

### Opinion of the Court

EVERETT, Chief Judge:

The opinion dated September 28, 1988, 27 MJ 50, is amended by adding a new Part III and a revised Part IV. *Id.* at 54–56.

Cuellar was tried by a general court-martial with members and found guilty of committing an indecent act upon a female under 16 years of age, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. He was sentenced to a dishonorable discharge, confinement for 6 years, and reduction to E–1. The convening authority approved the sentence, and the Court of Military Review affirmed. 22 MJ 529 (1986). This Court granted review to consider these interrelated evidentiary issues:

### I

WHETHER THE TRIAL COURT ERRED IN ALLOWING FOUR FEMALE WITNESSES TO TESTIFY THAT APPELLANT HAD COMMITTED PRIOR UNCHARGED ACTS OF SEXUAL MOLESTATION UPON THEM.

### II

WHETHER THE MILITARY JUDGE ERRED IN ADMITTING EVIDENCE OF PRIOR UNCHARGED ACTS OF SEXUAL MOLESTATION FOR WHICH ACTS APPELLANT HAD PREVIOUSLY BEEN TRIED AND ACQUITTED IN STATE COURTS.

### III

WHETHER AFTER ADMITTING EVIDENCE OF PRIOR UNCHARGED ACTS OF SEXUAL MOLESTATION, THE TRIAL COURT ERRED IN REFUSING TO ALLOW APPELLANT TO INTRODUCE EVIDENCE THAT HE HAD BEEN TRIED IN STATE COURTS AND ACQUITTED OF CHARGES ARISING FROM TWO OF THESE ACTS.

### I

#### A

On Thanksgiving Day, 1983, Cuellar hosted a large family gathering at his quarters at Fort Ord, California. His sister-in-law, her husband, and their four children, including their 10–year-old daughter Jenny, were present. The guests stayed overnight, and Jenny slept in a bedroom upstairs with Cuellar's little son and daughter. After falling asleep fully dressed, she awoke and found appellant rubbing her stomach. He had pulled her shirt up to the middle of her chest and had unbuttoned and unzipped her pants. Jenny recognized Cuellar because he was the only bald-headed person at the house that night. When she pushed his hand away and attempted to get out of the bed, he told her to lie back down and he would leave her alone. However, after she did so, he lifted her panties away from her body and put his hand near her vagina. He stopped when she hit his arm. On the pretext that she had to use the bathroom, Jenny went to the bathroom and then quickly proceeded to where her parents were sleeping and woke her father.

According to her father, Jenny was nervous and "shaking and I couldn't understand her. She was crying, and I tried to get her to calm down because I couldn't understand her at the moment." He immediately confronted Cuellar, who was standing in the living room, "looking at me real nervous, trying to have me stay quiet." However, Cuellar did not seem surprised by the confrontation and appeared to have been waiting for him to say something about the incident.[1] The father then asked Cuellar why "he molest[ed]" Jenny,

> and I was yelling and he stood staring at me and putting his fingers towards his mouth and trying to keep me to stay quiet. I just told him, "To hell with it!"

---

1. Jenny's father testified that at this time Cuellar was wearing cut-off shorts but that earlier that day he had worn black pants. Jenny had testified that a pair of black pants was by the side of the bed where she had been sleeping and that she had noticed the black pants when she went back into the bedroom to get her shoes and socks after the incident occurred.

Excuse my language. And I tried to get him to tell me why, and he turned around trying to get me to stay quiet, and he just laid on the couch pretending he didn't want to have nothing to do with it. So, I told him, "From this day on, I don't ever want to see you. I don't know you. I'm getting out of here right now. Don't ever say you are related to me."

Jenny's father and his family packed their things, abruptly left Cuellar's home around 4:00 a.m., and started driving back to their home in Oceanside.

Cuellar's illicit involvement with Jenny was further confirmed by a third prosecution witness, his brother-in-law, Donald Harper. He testified that he had been drinking with appellant and had asked what had happened at his house on Thanksgiving Day. Harper told Cuellar he had heard that Jenny's parents "were going to press charges for child molestation." Thereupon, appellant exclaimed, "I guess I really screwed up this time." Cuellar asked Harper to talk to Jenny's parents about "drop[ping] the charges if he agreed to seek psychiatric help."

**B**

Still, trial counsel wished to call to the stand four other young females—Sheryl, Robin, Darlene, and Becky—who allegedly had been sexually molested by Cuellar in his home at different times from 1980 to 1982. Darlene was Jenny's sister.

Defense counsel promptly moved *in limine* to prevent them from testifying on the ground that their testimony was inadmissible under Mil.R.Evid. 404(b) and 403, Manual for Courts-Martial, United States, 1984. Furthermore, he contended that, even if the evidence of the prior molestations was generally admissible, the incidents involving Becky and Darlene should be excluded because in 1982 Cuellar had been acquitted in Virginia of criminal charges against him relating to molestation of Becky and in 1984 a California court had granted him a judgment of acquittal by reason of insufficient evidence to prove a charge that Darlene had been molested. Alternatively, the defense contended that, if evidence of these two incidents was re-

ceived, then, at least, the defense should be allowed to inform the court-members that appellant had been acquitted on each occasion.

Trial counsel argued "that this is a textbook 404(b) case" and asserted that the previous misconduct would prove the intent and identity of appellant and would further corroborate Jenny's testimony. Any danger of unfair prejudice to appellant would be substantially outweighed by "the immeasurable probative value of this evidence." Furthermore, the prosecutor contended that an acquittal did not render inadmissible evidence concerning the alleged misconduct; and he himself later moved *in limine* that the defense "be precluded from using any testimony, remarks, questions or arguments which might inform the court members of said acquittals."

Upon considering the briefs and arguments of counsel, the military judge denied the defense motion *in limine*. He ruled the evidence was admissible under Mil.R. Evid. 404(b) for several reasons: There was a "striking similarity" in the previous acts of molestation that "most strongly" reflected "on the intent of the accused." He concluded that "the evidence might be utilized to destroy any suggestion that the acts complained of were innocent or there was a mistake about the intention or mistake about what took place." Moreover, the previous acts might have constituted "signature-type acts"—conduct which bore the accused's unique imprint. Finally, he felt that the previous incidents involving the young females were admissible under Mil.R.Evid. 404(b) because they tended to establish Jenny's "credibility" and "would tend to offset any suggestion that" her testimony was "youthful fantasy or conjecture or unreasonable apprehension and fear."

The military judge ruled that the evidence had great probative value; that it related to certain elements of the offense; and that the Government's use of the evidence in this case was not unfairly prejudicial to appellant. As to the incidents involving Becky and Darlene, the judge

perceived no double jeopardy or collateral estoppel, because "there was not sufficient findings concerning that testimony; and in that case, the parties—there is not a sufficient identity of parties."

The military judge also granted trial counsel's motion *in limine* to prevent the defense from introducing evidence showing that Cuellar had been acquitted of the charges against him in two of the molestation cases. He ruled that any acquittals were not relevant; but he indicated that Jenny could be questioned about her sister Darlene's case in order to show bias.

Sheryl then testified that 4 years before, when she was 10, she had spent New Year's Eve at Cuellar's house. While sleeping in the same bed with his daughters, she awoke to find him with his hand under the covers—under her nightgown—and touching her private parts. She pushed him away and left his house. According to Robin, several years earlier, when she was 15, she awoke while spending the night at Cuellar's house and found him lying beside her rubbing her "butt" with one hand and her vagina with the other. She left the bed but did not leave his house.

Darlene testified that 4 years before, when she was 8, she had stayed several days at Cuellar's home; and one night she awoke to find her jeans and shirt unbuttoned. He was feeling her stomach and placing his finger inside her vagina. She turned away and whispered to his daughter, Marie Cuellar, with whom she shared the bed. Thereupon, appellant left the room.

Finally, Becky testified that 3 years before, when she was 10, she had spent New Year's Day at Cuellar's house. On that morning she and Christy Cuellar, his other daughter, with whom she was sleeping, were awakened by appellant and offered breakfast. While they were in the kitchen, Cuellar, on the pretext of checking her for mosquito bites, rubbed his hands all over her body—including under her nightgown and between her legs. Christy had been sent to fetch some ointment while this was occurring; and, upon her return, Cuellar sent her back upstairs for a different ointment and again rubbed Becky's body and private parts. Shortly thereafter, while Christy was watching television, Cuellar tried to place Becky's hand inside his pants; but she jerked her hand away, ran upstairs, and reported the incident to her mother and her mother's boyfriend.

II

The first issue to be decided is whether the testimony of any of these young girls was admissible under Mil.R.Evid. 404(b). The Rule provides:

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

■ We conclude that this evidence qualified for admission under Mil.R.Evid. 404(b). Trial counsel properly attempted to use the previous misconduct to prove Cuellar's intent and to corroborate Jenny's testimony about his identity. Moreover, we agree with the military judge that there were close parallels between the previous acts of molestation committed by Cuellar and the claimed misconduct with Jenny. Each of the sex acts was committed (1) against young girls under the age of 16; (2) while they were visiting Cuellar's home, either by themselves or with other family members; (3) with one exception, during the nighttime; (4) while the minor female was in the presence of one or more children who were either sleeping or unaware of the activity going on; and (5) in each instance Cuellar placed his hand near the private area of the girl's body. Not only does this testimony of the four young witnesses strongly suggest that he intended to molest Jenny sexually, but also it tends to demonstrate a *modus operandi* on Cuellar's part. Under these circumstances, the evidence was admissible under Mil.R.Evid. 404(b).

*See United States v. Mann,* 26 MJ 1 (CMA), *cert. denied,* 109 S.Ct. 72 (1988).

■ Appellate defense counsel also have claimed that the evidence of uncharged misconduct was not "clear and conclusive" and therefore should have been excluded. *See United States v. Janis,* 1 MJ 395, 397 (CMA 1976). Even if this high standard of proof were applicable, the testimony of the four girls would have met that standard. Moreover, as we interpret Mil.R.Evid. 404(b), it does not require that the evidence of uncharged misconduct be "clear and conclusive," so in this regard *Janis* is superceded. *United States v. Mirandes-Gonzalez,* 26 MJ 411 (CMA 1988); *cf. Huddleston v. United States,* 485 U.S. ——, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988) (interpreting the comparable Federal Rule of Evidence). Under both the Military Rules and the Federal Rules, the judge is not required to make a preliminary finding that the uncharged misconduct occurred. Instead, he "decides whether the jury could reasonably find the conditional fact ... by a preponderence of the evidence." 108 S.Ct. at 1501.

■ We also disagree with appellant's argument that the probative value of the previous sex offenses was substantially outweighed by its danger of unfair prejudice to appellant. The decision to admit or reject evidence pursuant to Mil.R.Evid. 403 lies within the military judge's discretion; and unless he has abused his discretion, we will not disturb his ruling. In this case,

there was no abuse of discretion in admitting the challenged evidence. *Cf. United States v. Hicks,* 24 MJ 3 (CMA), *cert. denied,* —— U.S. ——, 108 S.Ct. 95, 98 L.Ed.2d 55 (1987) (the military judge did not abuse his discretion in admitting the testimony of four females who all testified to appellant's previous, similar acts of extortion for sexual favors).

### III

In *United States v. Hicks, supra,* the Court considered whether the military judge had erred in admitting evidence of prior acts of sexual molestation of which the accused had previously been tried and acquitted by a court-martial. Only two judges participated in the decision. However, both judges agreed there that collateral estoppel did not bar admission of evidence of the prior misconduct, because the accused had failed to establish that, in acquitting him at the earlier trial, the factfinder had necessarily decided that he was innocent of the prior misconduct as to which the Government offered evidence at the later trial.[2]

■ In the present case, we observe immediately that a basic prerequisite for applying collateral estoppel is missing. The trial here was by a court-martial, which is established under federal authority. The prior acquittals of Cuellar were in State courts. It is well established that, absent some statute to the contrary,[3] an acquittal in a criminal trial conducted by

---

**2.** Judge Cox' opinion also expressed his view as to some other aspects of collateral estoppel, which it was not necessary for me to reach in my separate opinion. He pointed out that

the better view [which is the majority rule] is that collateral estoppel does not preclude use of otherwise admissible evidence even though it was previously introduced on charges of which an accused has been acquitted. The questions to be decided are whether the evidence is relevant (Mil.R.Evid. 401) and whether the probative value of the proffered evidence is outweighed by its prejudicial effect (Mil.R.Evid. 403).

*United States v. Hicks,* 24 MJ 3, 8 (CMA), *cert. denied,* —— U.S.——, 108 S.Ct. 95, 98 L.Ed.2d 55 (1987).

**3.** The requirement for collateral estoppel that the sovereign must be the same in each trial

may be eliminated by statute, *see, e.g., State v. Hogg,* 118 N.H. 262, 385 A.2d 844 (1978). Thus, after the defendant in *United States v. Scott,* 24 MJ 186 (CMA 1987), had succeeded in having his conviction set aside and then at a retrial was acquitted by the court-martial, he could not be tried in a Virginia State court, because under a State statute, prosecution in a federal court bars trial for the same misconduct in a Virginia court. *See* Code of Virginia § 19.2-294. The NATO Status of Forces Agreement also eliminates the authority of dual sovereigns and bars trial in a court-martial after an accused has been tried in a court of the host country or vice-versa. *United States v. Green,* 14 MJ 461 (CMA 1983), and *United States v. Stokes,* 12 MJ 229 (CMA 1982).

one sovereign is not binding in a criminal trial conducted by a different sovereign. *Cf. Heath v. Alabama*, 474 U.S. 82, 106 S.Ct. 433, 88 L.Ed.2d 387 (1985); *United States v. Wheeler*, 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978); *Abbate v. United States*, 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959); *Bartkus v. Illinois*, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959); *United States v. Green*, 14 MJ 461 (CMA 1983); and *United States v. Stokes*, 12 MJ 229 (CMA 1982).

One justification for this rule is that, because of the difference in sovereigns, there is no identity of parties, which usually is a prerequisite for collateral estoppel. Another rationale is that the hands of one prosecutor should not be bound by the poor results obtained by another prosecutor who derives his authority from a different sovereign; otherwise the agents of one sovereign, by a negligent prosecution, could defeat the interests of the other sovereign. In any event, we are convinced that, until Congress legislates to the contrary, a court-martial is not collaterally estopped by the outcome of a trial in a state court. Thus, even if Cuellar were acquitted in the state courts because the factfinder there was not convinced of his guilt of the same misconduct as to which the Government sought to offer evidence in his trial by court-martial, this acquittal would not bar the court-martial from receiving the evidence.

IV

█ The military judge granted trial counsel's motion *in limine* to prevent the defense from introducing evidence or from arguing that Cuellar had been acquitted in state courts of the sexual misconduct about which Becky and Darlene were testifying. In so ruling, the judge was in error.

As already noted, *see* n. 2, *supra*, authority is divided as to whether the prosecution may offer evidence of uncharged misconduct of which the accused has previously been acquitted. However, in those jurisdictions which allow such evidence to be re-

ceived, there also is no unanimity of view whether, if evidence of the misconduct is admitted, the defendant may also show that he has been found not guilty thereof.

Appellant has cited 29 Am Jur 2d, Evidence § 332, at 380, which states:

> Most courts following that rule [that evidence of misconduct is admissible notwithstanding a prior acquittal] hold that where proof of another offense has been admitted, the defendant is entitled to prove his acquittal, although there is, in this respect, authority to the contrary.

(Footnotes omitted.)

This source refers to an Annotation in 86 A.L.R.2d 1132 (1962), which states, in § 4, that "[t]he authorities are not in agreement" on this issue but does not purport to state a majority rule. The Later Case Service Supplement (at 416) to this section cites various state court cases which generally hold that it is error to exclude evidence of the acquittal.[4]

The Government—although apparently conceding that the majority rule of the state courts is to allow a defendant to prove that he has been acquitted of other misconduct—contends that the approach of the federal cases is somewhat different; and they cite *United States v. Riley*, 684 F.2d 542 (8th Cir.1982), *cert. denied*, 459 U.S. 1111, 103 S.Ct. 742, 74 L.Ed.2d 962 (1983); *United States v. Kerley*, 643 F.2d 299, 300–01 (5th Cir.1981); and *United States v. Viserto*, 596 F.2d 531, 536–37 (2d Cir.), *cert. denied*, 444 U.S. 841, 100 S.Ct. 80, 62 L.Ed.2d 52 (1979).

Government appellate counsel insist that "evidence of a prior acquittal is not relevant, because it does not prove innocence, but rather merely indicates that the prior prosecution failed to meet its burden of proving beyond a reasonable doubt at least one element of the crime" and because the "probative value" of such evidence is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *See United States v.*

---

**4.** This supplement also mentions that the annotation in 86 A.L.R. 2d 1132 (1962) has been superseded by an annotation in 25 A.L.R. 4th 934 (1983).

*Kerley, supra.* Moreover, "a judgment of acquittal is hearsay"; and, unlike a judgment of conviction, it is not excepted by the rules of evidence from the operation of the hearsay rule. *United States Viserto, supra* at 537.

Although we recognize that these arguments are strong, we conclude that an accused is entitled to prove that he has been acquitted of acts of misconduct received in evidence under Mil.R.Evid. 404(b). As the Supreme Court of Oregon has pointed out:

> [T]he admission of evidence of other offenses in which the defendant has been involved without disclosing that he was acquitted tends to brand him as a 'criminal' and exposes him to the danger that the jury might lose sight of the presumption of innocence and the high level of proof required to rebut it. Contrary to the state's contention in this case, we do not believe that there is a risk of confusion of the jury sufficient to require the defendant to stand mute on the fact of her innocence or guilt of a crime nearly identical to the one charged.

*State v. Smith,* 271 Or. 294, 532 P.2d 9, 11–12 (1975).

In *Womble v. State,* 8 Md.App. 119, 258 A.2d 786, 789 (1969), which, like this case, involved a sexual offense, the Court concluded that evidence of the defendant's prior acquittal was admissible and reasoned:

> Faced with the fact that the jury had before it evidence that he had previously committed perverted sex acts, it was essential to the applicant's defense that he attempt to dispel the impact of that evidence on the jury. This he could do by showing that he had been tried and acquitted of those offenses. His acquittal was relevant and material and he was entitled to establish it by proper evidence. It was not only error to exclude such evidence, but the error was material to his right to a fair trial.

Contrary to our earlier precedent, *United States v. Janis, supra,* we now have held that evidence of uncharged misconduct may be admissible under Mil.R.Evid. 404(b), even though it has been established only by evidence which was less than "clear and convincing." *United States v. Mirandes-Gonzalez, supra* at 413. In view of our relaxation of the threshold requirements applicable to prosecution use of such evidence, we think it is only fair that an accused be allowed to bring to the factfinders' attention the fact that he was acquitted when brought to trial for the other misconduct. Allowing the defense to introduce evidence of the acquittal should be a condition imposed by the military judge in the proper exercise of his discretion before allowing evidence of other offenses to be introduced pursuant to Mil.R.Evid. 404(b). We do not believe that it places an undue burden on the Government for the accused to be allowed to inform the factfinder that he was acquitted of misconduct as to which evidence is being offered in a subsequent trial.[5]

### V

Although the military judge erred in granting trial counsel's motion *in limine,* we conclude that this error was not prejudicial. Only two of the four girls testified to prior sex acts as to which Cuellar had been acquitted; and as to the remaining two incidents, Cuellar had never been acquitted in any court. In our view, these remaining incidents, along with the testimony of Jenny, her father, and Harper, provided overwhelming evidence against the accused and rendered inconsequential the judge's error. *Cf.* Art. 59(a), Uniform Code of Military Justice, 10 U.S.C. § 859(a).

### VI

The decision of the United States Navy-Marine Corps Court of Military Review is affirmed.

Judges COX and SULLIVAN concur.

---

**5.** However, the defense must establish that the acquittal was for the *same* misconduct as to which the Government is offering evidence in the later trial.