UNITED STATES, Appellee,

v.

William R. FERGUSON, Machinist's Mate First Class, U.S. Navy, Appellant.

No. 58,030.

NMCM 87 0210.

U.S. Court of Military Appeals.

May 8, 1989.

For Appellant: *Commander J.A. Williams*, JAGC, USN and *Major J.L. Powers*, USMC (on brief); *Major J.B. Gilbert*, USMC.

For Appellee: *Lieutenant Colonel Leon F. Henley, Jr.*, USMC and *Lieutenant Commander L. Friedman*, JAGC, USN (on brief).

*Opinion of the Court*

EVERETT, Chief Judge:

In this appeal from a general court-martial conviction,[1] we must decide whether

---

1. Ferguson originally was charged with sodomy with a female under 16 years of age, indecent assault on a woman not his wife, and solicitation of incest, in violation of Articles 125 and 134, Uniform Code of Military Justice, 10 USC §§ 925 and 934, respectively. The charges related to incidents in 1983, in December 1985, and on January 1, 1986, respectively. He was convicted of the 1983 sodomy. Also, he was found guilty of simple assault and battery, in violation of Article 128, UCMJ, 10 USC § 928, as a lesser-included offense on the charge of indecent assault. He was acquitted of the alleged solicitation. The members sentenced Ferguson to a

the military judge erred to Ferguson's prejudice by admitting evidence of his prior uncharged misconduct. *See* Mil.R.Evid. 404(b), Manual for Courts–Martial, United States, 1984.[2] (25 MJ 192). This evidence consisted of testimony both from the alleged victim of the charged offenses and from her older sister. We conclude that the military judge erred by overruling the timely defense objection thereto.

### I

Kim and Kathy are Ferguson's stepdaughters. Kim, the alleged victim in this case, was born in 1970; and Kathy, her sister, was born in 1967.

Kim testified that she had visited the Alcohol Rehabilitation Center in the fall of 1985 in an effort to get help for her mother. During discussions there, Kim revealed that appellant regularly had committed oral sodomy with her in 1983. She also testified that, in December 1985, appellant had fondled her breast and touched her vaginal area. Moreover, she swore that he had solicited sexual intercourse with her on January 1, 1986. These incidents formed the bases of the three charges against appellant. *See* n. 1, *supra.*

During her testimony, Kim stated that, *"when I was very little, ...* [appellant] would put something sweet on his penis.... Something sweet like sugar" and then make her "suck on his penis." (Emphasis added.) Objecting to this testimony "as far as time period," defense counsel explained: "[S]he says when she was very little. I'm not sure what she means by that. I think we might need an Article 39(a) session. I anticipate the need for one." When trial counsel indicated that he did not intend to pursue this line of questioning any further, the military judge directed the examination to continue, without ruling on defense counsel's objection and

without limiting in any way the members' consideration of this testimony.

To support Kim's testimony in an anticipated battle of credibility against appellant's denials and explanations, the prosecution called Kathy as a witness. Prior to her testifying, though, defense counsel asked for an out-of-court session under Article 39(a), Uniform Code of Military Justice, 10 USC § 839(a), regarding the scope of Kathy's testimony. At that session, the military judge asked trial counsel for an "offer of proof ... as to what you anticipate from this witness." The following colloquy ensued:

TC: Your Honor, other than the corroborative testimony of this witness regarding incidents that occurred to Kimberly, the government plans to question Kathryn, her older sister, on similar acts that were perpetrated upon her. The theory being that—

MJ: By the accused?

TC: Yes, Your Honor, by this accused, and that under 404(b), this is admissible as other acts evidence.

MJ: When, where, and specifically, what type of acts?

TC: All right, Your Honor. The acts that we're referring to are the acts of sodomy almost exactly as Kimberly testified thereto, is that the accused used some sweet substance, placed it on his organ, and then had the girls suck his penis. Because of that similar *modus operandi*, we feel that that comes under 404(b) and that because of the similarity in nature—similarity of the accused and the relationship of the sisters, the fact that they were stepdaughters, that this demonstrates a plan, preparation, the *modus operandi*, that ascribes credibility to this testimony and it's highly rele-

dishonorable discharge, confinement for 1 year, and reduction to the lowest enlisted grade. The convening authority reduced the nature of the discharge from dishonorable to bad-conduct but in all other respects approved the trial results. The Court of Military Review affirmed in a short-form opinion.

**2.** The statement of this rule in Manual for Courts–Martial, United States, 1969 (Revised edition), is the same as that in the 1984 Manual, so we will refer to the Manual in force at the time of trial.

vant in proving the offense that [is] before the court.

MJ: And when and where did this occur?

TC: This occurred in the—if I'm not mistaken in California, Your Honor, when the family lived in California, when Kathy was under ten.

Defense counsel voiced "a strenuous objection." He noted that the uncharged misconduct at issue was very "remote in time." Further, observing that *modus operandi* evidence usually is relevant only "when identity [of the perpetrator] is an issue," he reminded the judge that identity of appellant as the alleged assailant was not in contest. Finally, highlighting the prejudicial nature of the evidence compared to any remote probative value, he urged that the evidence presented a danger that the members would thereby view appellant as "a bad actor or a bad person" and convict him accordingly.

In response, trial counsel referred to the decision of the Court of Military Review in *United States v. Cuellar,* 22 MJ 529 (NMCMR 1986),[3] in support of the Government's contrary position as to whether prejudice outweighed probative value. Moreover, trial counsel asserted that, in a prosecution like this, the cited precedent also supported use of such evidence to show specific intent, as well as "identity so that it isn't necessary the identity be in question, it is simply allowed to prove the issue of intent for the sodomy cases."

After more exchanges between counsel, the military judge concluded that "the fact that these incidents [presumably, the alleged sodomies with Kim during 1983 and the claimed sodomies with Kathy, apparently in 1974 or 1975] occurred so far apart ... [is not] particularly significant." Further, he found "that the act of oral sodomy could be, obviously, very similar and I think that it's extremely relative [sic]." Finally, although the evidence was clearly prejudicial to appellant, the military judge held that the prejudice did not greatly outweigh the probative value. "So, I'm going to overrule defense objection to the admis-

sion of Kathy's testimony on prior acts of oral sodomy with the accused."

Subsequently, Kathy took the stand and indicated her personal belief in what "was going on" with Kim. When asked why she believed the incidents had occurred, she answered, "Because from my, sort of, past of what I remembered happened to me." Here, defense counsel interrupted to "renew my objection and ask for a limiting instruction at the appropriate time during this testimony either before or after for the purpose for which it can be used." The judge asked if defense counsel had one "handy," and counsel responded that it was just the usual one. Without further substantively responding to the defense objection or the request for a limiting instruction, the military judge told trial counsel to proceed.

Thereafter, Kathy revealed that, when she was "about 7 or 8 years old, real young" (presumably, then, about 1974 or 1975), appellant had made her "suck on his penis.... Sometimes he would put something sweet on it." Consistent with Kim's testimony as to her experiences, Kathy stated that these incidents occurred in the family house when her mother either was absent or was asleep.

At the conclusion of Kathy's testimony, the military judge gave the members the following limiting instruction as to use of that evidence:

Members, I want to give you an instruction regarding some of Kathy's testimony. Through her testimony, evidence was introduced that she also engaged in oral sodomy with her stepfather. You may consider that for the very limited purpose of its tendency, if any, to identify the accused as a person who committed the offenses which are charged at this court-martial. You may not consider this evidence for any other purpose and you may not conclude from this evidence that the accused is a bad person or has criminal tendencies and that he, there-

3. This decision was affirmed, 27 MJ 50 (CMA 1988), as amended March 28, 1989.

fore, committed the offenses charged at this court-martial.

However, when it came time to discuss the prefindings instructions, the military judge indicated a change of mind. After discussion with counsel—and objection by the defense—the military judge decided at that point to expand his instructions to permit the members to use Kathy's testimony to show appellant's specific intent as to the charged indecent assault and solicitation, as well as to show appellant's identity as to the sodomy.

After argument by counsel but before delivering his instructions, the military judge called an Article 39(a) session to indicate yet another reconsideration of his ruling regarding intent and to explain further the factors supporting admission of the evidence to show identity:

Counsel, in a prior session when we discussed the proposed instructions, I indicated that I was going to give the instruction on the other offenses that were acts of misconduct as I had given earlier in this trial; however, I was going to add to that, that that prior act could be used to prove intent on the accused's part—specific intent. I have reconsidered that because the prior act dealt with sodomy which is only similar to Charge I at his trial and that offense does not require specific intent. There is no evidence of prior misconduct similar to the offenses charged in Charge II and, since those offenses require specific intent, I don't believe that the prior sodomy—the evidence of prior sodomy is admissible to show any—of the acts charged in Charge II, particularly those requiring specific intent.

In addition, I don't think I adequately stated my balancing of the various factors on why I believe that the prior misconduct should be admitted into evidence. There is obviously a gap in time between acts described by the older sister, apparently—or approximately 9 years, and that is not to be taken lightly. Nevertheless, I find that balanced by the similarity in the acts, not only the fact of

oral sodomy, but also *the placing a sugary type of matter on the accused's penis both with the older girl and then later with the offenses charged at this trial;* second, that it did involve daughters; third, that it happened in the privacy of the accused's residence; and the otherwise identical type offense involved that I think the probative effect of that prior misconduct outweighs the prejudicial effect that it has on the accused in admitting it.

Now, I previously instructed the court that they could use that to identify the accused as a person who committed the offense. I think that was improper on my part and, when I reinstruct them I'm going to tell them to disregard that with regard to identity, but they should consider that prior misconduct for the purpose of showing the *modus operandi* of the accused in Charge I, *vis a vis,* the prior misconduct. Of course, I will tell them they cannot consider that for any other purpose as contained in the Military Judge's Benchbook instruction.

(Emphasis added.)

## II

In this Court, appellant challenges admissibility of Kim's testimony about uncharged fellatio with appellant when she "was very little" and Kathy's testimony as to similar uncharged acts by her when she was "real young." Although defense counsel asserted timely and properly framed objections in each instance, the detailed recitation of developments set out above reflects the confusion that reigned regarding precisely what use of that evidence would be permitted.

Additionally, apparently pivotal to the military judge's ultimate position on admissibility of Kathy's testimony was his confusion as to what incidents Kim had referred to when she had talked about appellant using "something sweet on his penis." Her testimony quite clearly indicates that she then was referring to uncharged misconduct several years earlier than the 1983 alleged sodomies; yet the military judge,

with equal clarity, implied in the quotation last emphasized above that he inferred her testimony to refer to the charged 1983 sodomies.

To avoid further confusing this situation, we approach the questioned testimony of Kim and Kathy quite simply: What was the relevance of this evidence of uncharged misconduct?

## A

■ Mil.R.Evid. 401[4] states: " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *See* Mil.R.Evid. 402. In this regard, though, Mil.R.Evid. 404(b) clarifies that evidence of past wrongdoing is not "relevant" to show in a general sense that, "if he did it before, he probably did it again." Specifically, that rule warns, "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith."

More specifically, however, Mil.R.Evid. 404(b) reads on to acknowledge that such evidence of uncharged misconduct "may . . . be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." This list is illustrative, not exhaustive; but the point it manifestly makes is that this kind of evidence, to be relevant, must directly relate to some specific "fact that is of consequence to the . . . action," not to the general issue of criminality.[5]

We stated in *United States v. Wingart*, 27 MJ 128, 135 (CMA 1988):

As we have observed on many occasions, it often is very difficult to determine in advance whether evidence of uncharged misconduct will qualify for ad-

mission in a particular case. *See, e.g., United States v. Brannan*, 18 MJ 181, 185 (CMA 1984); S. Saltzburg, L. Schinasi, and D. Schleuter, *Military Rules of Evidence Manual* 361–63 (2d ed.1986), Editorial Comment to Mil.R.Evid. 404(b). Indeed, admissibility may depend on the issues that are raised at trial. *Cf. Thompson v. United States*, 546 A.2d 414 (D.C.App.1988).

Particularly applicable to this case, we observed there hypothetically:

Similarly, evidence of an appellant's *modus operandi* might be admissible to help identify him as the perpetrator of a crime with which he is charged if there is some question about the identity of the person who committed the crime; and yet this evidence might be inadmissible if no issue existed as to identity but only as to whether a crime had been committed in the first place. *See United States v. Rappaport*, 22 MJ 445, 447 (CMA 1986).

*See United States v. Cuellar*, 27 MJ 50, 53 (CMA 1988), where we opined that "[t]rial counsel properly attempted to use the previous misconduct" that had "close parallels" with the charged offense "to prove Cuellar's intent and to corroborate Jenny's testimony about his identity."

In determining exactly what the prosecutor seeks to prove with evidence of uncharged misconduct, we commented in *United States v. Gamble*, 27 MJ 298, 303–04 (CMA 1988):

The same commentators [S. Saltzburg, L. Schinasi, D. Schleuter, *Military Rules of Evidence Manual* (2d ed. 1986) ] have observed:

It is common for the prosecution to use short-hand expressions like modus operandi, common plan or scheme, etc., to account for an offer of evidence of other acts. A trial judge must be certain to make the prosecution state ex-

---

4. *See* n. 2, *supra.*

5. "These rules [Mil.R.Evid. 404(b) and 403] recognize that such evidence [of uncharged misconduct] can be very damaging to the accused. Therefore, the evidence is inadmissible unless

there is some purpose to be served by its reception other than to show that the accused is predisposed to commit crime." *United States v. Wingart*, 27 MJ 128, 136 (CMA 1988).

actly what issue it is trying to prove in order to see whether the evidence is probative, how probative it is, and whether it should be admitted in light of *other* evidence in the case and the ever present danger of prejudice.

*Id.* at 362 (footnote omitted).

Similarly this Court has cautioned that we do not approve "of broad talismanic incantations of words such as intent, plan, or modus operandi, to secure the admission of evidence of other crimes or acts by an accused at a court-martial under Mil.R.Evid. 404(b)"; and we have expressed "concern ... with the dangers in admitting such evidence even if it meets the requirements of Mil.R.Evid. 404(b). *See* Mil.R.Evid. 403," *United States v. Brannan*, 18 MJ 181, 185 (CMA 1984).

### B

■ Ultimately, the military judge here instructed the members that they could use Kathy's testimony for the purpose—and only for the purpose—of showing appellant's *modus operandi*. The judge's out-of-court discussion with counsel preceding that instruction indicates that, somehow, he viewed *modus operandi* evidence as differing in some way from evidence as to identity; but our opinions make it clear that the relevance of *modus operandi* is to show the perpetrator's identity. *United States v. Gamble, supra* at 305; *United States v. Wingart, supra* at 135; *United States v. Rappaport, supra* at 446–47.

Identity, of course, was not in issue in this trial: Either the charged acts occurred or they did not—there was no question whether, if they did, appellant was the perpetrator. Accordingly, Kim's and Kathy's questioned testimony was not relevant here to show *modus operandi*, and no other specific basis of relevance has been persuasively urged upon us.

Moreover, even if some basis could logically be argued, the challenged evidence here lacks the "close parallels" with the charged sodomies that we found in *Cuellar*. The only similarities were that they allegedly all were performed by appellant on his stepdaughters in the family home while the mother was not immediately present. Can it be imagined that such acts generally would be performed under *other* circumstances? Indeed, these factors, instead of reflecting a personalized stamp which would be highly probative of identity, *see United States v. Gamble, supra,* reflect a scenario which is rather generic to cases involving familial sexual abuse.

■ The military judge obviously placed significance on the similarities in Kim's and Kathy's testimony regarding appellant's putting "something sweet on his penis." However, that similarity was significant only because the military judge erred in inferring that Kim's testimony in that regard involved the 1983 sodomies. As we remarked earlier, instead her testimony about that quirk applied to incidents many years before the charged offenses—and there was no evidence at all that appellant followed such a practice as to the latter. Two bodies of otherwise inadmissible testimony cannot bootstrap each other into admissibility—instead, to be relevant, they must relate to the charged offenses. *See United States v. Brannan, supra; cf.* Mil.R.Evid. 401, 402, and 404(b).

### III

■ We cannot fairly conclude that this testimony—especially Kathy's—did not prejudice appellant's case as to the charged 1983 sodomies. Kim's alone might not have been too damaging; after all, this case from beginning to end depended upon the relative credibility of Kim and appellant in the factfinders' eyes. But Kathy's testimony sealed appellant's fate as to the sodomy offense.

It is clear that the members did not find appellant's testimony wholly unbelievable: They acquitted him outright of solicitation and reduced the indecent-assault charge to one of simple assault and battery—both consistent with appellant's testimony. But with Kathy's testimony so vividly buttressing Kim's as to offenses which are so re-

pugnant to ordinary men and women, there was virtually no chance that the members would believe appellant's denials of the 1983 events. Thus, admission of this uncharged misconduct was prejudicial error as to Charge I.

IV

The decision of the United States Navy–Marine Corps Court of Military Review is reversed as to Charge I and its specification and the sentence. The findings of guilty of Charge I and its specification are set aside. The record of trial is returned to the Judge Advocate General of the Navy for remand to that court, which may order a rehearing on the affected Charge and the sentence, or dismiss that Charge and reassess the sentence based on the remaining findings of guilty.

Judge SULLIVAN concurs.

COX, Judge (concurring):

Appellant was charged with three specifications. The first alleged that, at various dates in 1983, he committed sodomy with his stepdaughter, Kimberly, then about 13. These acts, by the prosecution's evidence, amounted to forcing Kimberly to fellate him; appellant denied it.

The second specification alleged that, in December 1985, appellant indecently assaulted Kimberly "with intent to gratify his sexual desires." This episode occurred after the sodomies had been reported to authorities and after a social worker had paid a visit to the family home to determine if the children needed to be removed. According to all parties, appellant was quite upset by the allegations. As the victim described it:

My stepfather [appellant], he got really upset, I think, because Sally Avery [the social worker] had been there and I had gone over by the sewing machine, which is in the corner, and he came over and he started in fondling my breast and he said, "Did I ever touch you like this," then he put his hands down between my legs and he goes, "Did I ever touch you like this?"

Appellant, in his trial testimony, admitted grabbing the victim's breast. He denied, however, that it was done with intent to gratify his lust, but rather maintained that it was done in anger. He denied attempting to touch her vaginal area. Based on the testimony, the court members found appellant not guilty of indecent assault, but guilty of battery: the unlawful touching of the victim's breast only.

The third specification alleged that, on January 1, 1986, appellant wrongfully solicited the same victim to commit an indecent act, namely incest. The victim described the incident as follows:

Sally Avery had been over and she'd been talking to my mother and my stepfather and she had just left, and my sister and I came in from shopping, I think. My stepfather was saying that if he was going to be accused of it, then he was going to get some, and he said that he was going to take me up to bed and my mother said that we could use her bed.

Both appellant and his wife verified the statements attributed to them, but both insisted that the statements were made in anger or sarcasm, and were not meant literally. Not surprisingly, since no solicitation was implied in the Government's evidence, appellant was acquitted of solicitation. *See* para. 105, Part IV, Manual for Courts–Martial, United States, 1984.

Returning to the sodomy specification, which is most pertinent to this appeal, trial counsel quickly focused on the subject with the witness, Kimberly. She recounted the forced fellatios, which occurred approximately once or twice a week during the majority of 1983. Trial counsel then asked, "Was there anything else on him besides just his penis?" The response was, "Sir, when I was very little, he would put something sweet on his penis." As indicated in the majority opinion, it is clear from the context that this latter statement related to a time period considerably prior to the charged incidents. A timely defense objection was never formally ruled on, with the

result that the response was allowed to stand.

When Kathy, the older sister, testified, she was permitted to state that she believed the incidents reported to her by Kimberly because of her own prior experiences with appellant. These experiences occurred years before, when Kathy was 7 or 8 years old. As with Kimberly, she was forced to fellate appellant "a couple of times." On at least one such occasion, he "put something sweet on" his penis. On an unspecified number of occasions, he ejaculated in her mouth.

Two other witnesses testified against appellant. Avery, the social worker, testified that during one of her visitations to the home appellant said that he was not guilty of any sexual misconduct, but if he was going to be accused of such, he was "going to get some."

Special Agent Volpe of the Naval Investigative Service testified about a conversation * she had with appellant concerning his alcoholism and the allegations of sexual abuse. She related that

> we talked about the blackout periods for a bit and he told me that maybe something could have happened during a blackout, but he just couldn't remember anything *that* disgusting, I think he said, happening.

(Emphasis added.) Volpe clarified that "something" referred to "oral copulation," the subject they had been discussing.

On being asked about this statement on cross-examination, appellant explained:

> I made that statement before I really realized what I was being accused of doing. Once I saw—actually saw, in writing, what they were throwing at me, saying that I, in fact, was supposed to have done, then I realized, no, we've got a problem. I said, "I didn't do that."

As indicated in the majority opinion, the military judge, after much vacillation, settled upon this instruction to the members regarding the evidence of uncharged misconduct committed against Kathy:

> Evidence that the accused engaged in sodomy with Kathy ... may be considered by you for the limited purpose of its tendency, if any, to show a *modus operandi* of the accused. You may not consider this evidence for any other purpose, and you may not conclude from this evidence that the accused is a bad person or has criminal tendencies and he, therefore, committed the offenses charged.

Later, in response to a question from the members, he explained: "If you think she [Kathy] was telling the truth, you can consider that as the *modus operandi* or method of operation of the accused." These remarks constituted the *total* instruction on the subject of uncharged misconduct. No reference at all was made to the prior uncharged misconduct allegedly perpetrated against Kimberly. What issues or elements the *modus operandi* evidence was relevant to, what inferences might properly be drawn from it, and how it was to be applied were never explained. Moreover, notwithstanding a prior ruling by the military judge, the evidence was not limited to the sodomy charge.

The use and misuse of prior misconduct evidence is undoubtedly one of the touchiest subjects known to the law, and this is especially so in cases of alleged sexual abuse of children. A recent article by Professor John E.B. Myers, *Uncharged Misconduct Evidence in Child Abuse Litigation,* 1988 Utah L.Rev. 479, serves as an excellent primer on the subject and should be mandatory reading for all members of the criminal bench and bar. An even deeper analysis is provided by Professor Edward J. Imwinkelried in his book, *Uncharged Misconduct Evidence* (1984).

This case must fall because the purpose for which the uncharged misconduct was admitted was never adequately identified. The members were left to figure out for themselves how the uncharged misconduct related to the charged misconduct. Most likely they concluded that, because he had done it before, he probably did it again—

---

* Appellant posed no objection to admission of this statement.

precisely the inference Mil.R.Evid. 404(b), Manual for Courts–Martial, United States, 1984, was designed to prevent.

Even if the evidence or an inference derived therefrom was legitimately probative of an issue relating to a charged offense, the danger of unfair prejudice may have been so overwhelming as to require exclusion of the evidence under Mil.R.Evid. 403. Given the extraordinarily inflammatory nature of the uncharged misconduct evidence, it is impossible to conclude other than that appellant was prejudiced, despite the solid case presented against him through other witnesses. For these reasons and those advanced in the majority opinion, I concur.