# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 40349**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Jordan S. EDWARDS**
Captain (O-3), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 11 December 2023

————————————

*Military Judge*: Brett A. Landry.

*Sentence*: Sentence adjudged 16 May 2022 by GCM convened at Los Angeles Air Force Base, California. Sentence entered by military judge on 12 July 2022: Dismissal, confinement for 42 months, and a reprimand.

*For Appellant*: Major Heather M. Caine, USAF; Joshua R. Traeger, Esquire.

*For Appellee*: Lieutenant Colonel Thomas J. Alford, USAF; Lieutenant Colonel G. Matt Osborn, USAF; Captain Olivia B. Hoff, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, CADOTTE, and MASON, *Appellate Military Judges*.

Judge MASON delivered the opinion of the court, in which Chief Judge JOHNSON and Senior Judge CADOTTE joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

MASON, Judge:

At a general court-martial, a panel of officer members convicted Appellant, contrary to his pleas, of two specifications of sexual assault upon a person who

was asleep and one specification of conduct unbecoming an officer, in violation of Articles 120 and 133, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920, 933.[1,2] Appellant elected sentencing by military judge alone. The military judge sentenced Appellant to a dismissal, confinement for 42 months, and a reprimand. The convening authority took no action on the findings. Pursuant to Appellant's requests, the convening authority directed deferment of the automatic forfeitures until the entry of judgment, waived all automatic forfeitures for a period of six months, and directed the total pay and allowances to be paid to Appellant's dependent children.

Appellant raises four issues on appeal: (1) whether the military judge erred when he admitted evidence of Appellant's uncharged acts of alleged "coercive control" to show an intent to dominate or control SL, as such intent is unrelated to SL's charged inability to consent; (2) whether Specifications 2 and 4 of Charge II (sexual assault upon SL) are factually and legally insufficient because there lacks evidence that SL was actually asleep at the time of the alleged offenses; (3) whether Appellant was deprived of his constitutional right to a unanimous verdict; and (4) whether Appellant's sentence to 42 months of confinement and a dismissal is inappropriately severe.[3]

We have carefully considered issue (3) and find it does not require discussion or relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987).[4] As to the remaining issues, we find no error that materially prejudiced Appellant's substantial rights, and we affirm the findings and sentence.

## I. BACKGROUND

In June 2017, Appellant met SL online. The two met in person a month or two later. They began talking every day. Each was close to ending their current marriages and quickly established an "intimate friendship." Over time,

---

[1] Unless otherwise noted, all references in this opinion to the UCMJ, Rules for Courts-Martial, and Military Rules of Evidence are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] The court members found Appellant not guilty of one specification of damaging non-military property, three specifications of sexual assault without consent, one specification of sexual assault by placing a person in fear, one specification of aggravated assault, two specifications of assault consummated by a battery, one specification of stalking, one specification of impeding the due administration of justice, and one specification of communicating a threat, in violation of Articles 109, 120, 128, 130, 131g, 133, and 134, UCMJ, 10 U.S.C. §§ 909, 920, 928, 930, 931g, 933, 934.

[3] Appellant raises Issue (4) pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

[4] *See United States v. Anderson*, 83 M.J. 291, 302 (C.A.A.F. 2023).

Appellant and SL's relationship became tumultuous. They broke up and got back together multiple times.

In February 2019, SL and her two children moved into Appellant's home in Ohio with Appellant and Appellant's two children. Appellant continued to go to work, and SL stayed home with the four children. SL was very tired from the efforts of taking care of the children in the home, as well as engaging in consensual sexual intercourse with Appellant at least two to three times every day.

On a few occasions[5] between February 2019 and April 2019, SL, tired from the day, declined to engage in sexual intercourse with Appellant at the end of the day and went to sleep. When she awoke, Appellant was penetrating her vagina with his penis. The first time this happened, SL awoke and told Appellant that she was tired and that she just wanted to sleep. She told Appellant that she did not want to have sex. Appellant ignored her. He continued to penetrate her until he ejaculated. After he finished penetrating her, Appellant became upset with SL because she did not appear to be "into it." SL was scared at that time because Appellant was angry, and SL did not know what reaction he wanted from her to avoid making him angry.

Going forward, Appellant continued to initiate vaginal sex while SL slept on multiple occasions, commencing one week after the initial sleep penetration. On subsequent occasions when Appellant would again penetrate SL's vagina while she slept, she did not bother telling him to stop. Rather, SL pretended to be asleep throughout the remainder of Appellant's penetration. She pretended to be asleep because she was scared that Appellant would get angry at her again.

In April 2019, SL and her children moved out of Appellant's home in Ohio and moved back to California. However, SL and Appellant continued to talk every day and visited each other in Ohio or California.

The relationship continued but vacillated between acrimonious and non-acrimonious feelings between them over the next several months. In November 2019, SL and Appellant moved back in together and were married on 9 December 2019. On two occasions, incidents in the home caused Appellant to get very upset. On those occasions, in SL's presence, he threw things at the walls, punched the walls and glass pictures, and screamed at her. After the second incident, SL reported Appellant to local law enforcement. Upon command

---

[5] SL testified that this happened in Beavercreek, Ohio "a few times, I can't tell you exactly how many . . . ."

notification, Appellant was referred to military's Family Advocacy Program for support services.

Around mid-April 2020, SL and Appellant began to reconcile. A few months later, Appellant was reassigned to Los Angeles Air Force Base, California. Appellant and SL decided to live together again, this time with Appellant's aunt who lived in the Los Angeles area. One night in the beginning of September 2020, for independent reasons, both SL and Appellant were upset when the two went to bed together. SL woke up at some point during the night and found that Appellant had just started to penetrate her vagina with his penis. As she had previously, SL pretended to still be sleeping and Appellant continued to penetrate her until he ejaculated. Over the next three months, Appellant penetrated her in this way a "few other times."

## II. DISCUSSION

### A. Admission of Uncharged Acts

#### 1. Additional Background

Appellant was originally charged with, amongst other offenses, two specifications of assault consummated by a battery and one specification of aggravated assault against KE, Appellant's first spouse, as well as six specifications of sexual assault against SL, Appellant's second spouse. Before trial, the Government provided the Defense with notice that it may offer evidence of Appellant's uncharged acts to support their theory that Appellant engaged in "coercive control" of KE and SL over the course of their relationships. The Defense moved to exclude this evidence. After presentation of evidence and argument in a pretrial motions hearing, the military judge permitted the Government to present evidence that: (1) Appellant may have requested that both KE and SL provide him with phone location data; (2) Appellant may have been verbally abusive towards both KE and SL; (3) Appellant may have requested that SL provide him with text message read receipts; (4) Appellant may have expected SL to engage in sexual intercourse with him on a frequent basis and may have pressured her to do so; and (5) Appellant may have struck his stepson (SL's son). Additionally, the military judge permitted expert testimony explaining intimate partner violence and coercive control from a forensic psychologist.

At trial, SL was cross-examined by trial defense counsel including the following exchange:

> Q: And there was this span of time between January 2019 and August 2020 where he was having sex with you while you were asleep?
>
> A: Yes

Q: And you say that he was controlling access to friends and family?

A: Yes

Q: But you don't report that in your [Family Advocacy Program] intake in 2020?

A: As I said, I didn't have a name for what was happening. I just knew I didn't like it. So, I don't know the direct question that they asked me, but I wouldn't have put a name to anything.

Q: So, in your [Family Advocacy Program] intake, you indicated to them that there was no forced or coerced sex in the past.

A: I'll repeat what I just said. At that time, I didn't have a name for anything, so I'm not sure how I would have answered.

Later in the trial, the Family Advocacy Treatment Manager testified. Trial defense counsel asked her about the intake responses from SL. She stated that SL reported in March 2020 that SL was not a victim of forced or coerced sex on the intake paperwork.

Prior to providing instructions to the members, the military judge provided a draft copy of the instructions to counsel and conducted an Article 39a, UCMJ, 10 U.S.C. § 839(a), session to discuss instructions. During this session, trial defense counsel actively objected to and requested special instructions related to specifications for which Appellant was ultimately acquitted. Trial defense counsel neither objected to nor requested any modifications or additional instructions regarding evidence of coercive control or intimate partner violence as reflected in the other crimes, wrongs, or acts evidence portion of the instructions.

The military judge instructed the court members on this evidence as follows:

> Other Crimes, Wrongs, or Acts Evidence: You may consider evidence that the accused may have requested that both KE and SL provide him with phone location data, that he may have been verbally abusive towards both KE and SL, that he may have requested that SL provide him with text message read receipts, and that he may have expected SL to engage in sexual intercourse with him on a frequent basis and may have pressured her to do so, for the limited purpose of its tendency, if any, to prove that the accused was motivated to and intended to control the actions and behaviors of KE and SL. You may not consider this evidence for any other purpose and you may not conclude from this evidence that the accused is a bad person or has general

criminal tendencies and that he therefore committed the offenses charged. Additionally, you may consider evidence regarding an alleged incident during which the accused may have struck his stepson for its limited tendency, if any, to prove that the accused was motivated to and intended to control the actions and behaviors of SL. You may also consider this evidence in terms of its tendency, if any, to provide context to the relationship between the accused and SL as well as the relationship between SL and KE to the extent you believe those factors relate to your consideration of the charged offenses in this case. You may not consider this evidence for any other purpose and you may not conclude from this evidence that the accused is a bad person or has general criminal tendencies and that he therefore committed the offenses charged.

Further, the military judge instructed the court members:

Spillover: An accused may be convicted based only on evidence before the court, not on evidence of a general criminal disposition. Each offense must stand on its own and you must keep the evidence of each offense separate. Stated differently, if you find or believe that the accused is guilty of one offense, you may not use that finding or belief as a basis for inferring, assuming, or proving that he committed any other offense. If evidence has been presented which is relevant to more than one offense, you may consider that evidence with respect to each offense to which it is relevant. For example, if a person were charged with stealing a knife and later using that knife to commit another offense, evidence concerning the knife, such as that person being in possession of it or that person's fingerprints being found on it, could be considered with regard to both offenses. But the fact that a person's guilt of stealing the knife may have been proven is not evidence that the person is also guilty of any other offense. The burden is on the [P]rosecution to prove each and every element of each offense beyond a reasonable doubt. Proof of one offense carries with it no inference that the accused is guilty of any other offense.

At the conclusion of provision of instructions to the members, the military judge asked, "Do counsel object to the instructions given or request additional

instructions?" Both trial counsel and trial defense counsel responded, "No, Your Honor."[6]

### 2. Law

We review a military judge's decisions to admit evidence pursuant to Mil. R. Evid. 404(b) for an abuse of discretion. *United States v. Hyppolite*, 79 M.J. 161, 164 (C.A.A.F. 2019) (citation omitted); *United States v. Hills*, 75 M.J. 350, 354 (C.A.A.F. 2016) (citation omitted). "An abuse of discretion occurs when a military judge's decision is based on clearly erroneous findings of fact or incorrect conclusions of law." *United States v. Hernandez*, 81 M.J. 432, 437 (C.A.A.F. 2021) (citation omitted). "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion." *United States v. McElhaney*, 54 M.J. 120, 130 (C.A.A.F. 2000).

Mil. R. Evid. 404(b) provides that evidence of a crime, wrong, or other act by a person is generally not admissible as evidence of the person's character in order to show the person acted in conformity with that character on a particular occasion. However, such evidence may be admissible for another purpose, including, *inter alia*, proving motive, intent, or the absence of mistake. Mil. R. Evid. 404(b)(2). The list of potential purposes in Mil. R. Evid. 404(b)(2) "is illustrative, not exhaustive." *United States v. Ferguson*, 28 M.J. 104, 108 (C.M.A. 1989). We apply a three-part test to review the admissibility of evidence under Mil. R. Evid. 404(b):

> 1. Does the evidence reasonably support a finding by the court members that [the] appellant committed prior crimes, wrongs or acts?
>
> 2. What "fact . . . of consequence" is made "more" or "less probable" by the existence of this evidence?
>
> 3. Is the "probative value . . . substantially outweighed by the danger of unfair prejudice"?

*Hyppolite*, 79 M.J. at 162 (omissions in original) (quoting *United States v. Reynolds*, 29 M.J. 105, 109 (C.M.A. 1989)). "When considering whether uncharged misconduct constitutes admissible evidence of intent under [Mil. R. Evid.] 404(b), we consider 'whether Appellant's state of mind in the commission of both the charged and uncharged acts was sufficiently similar to make the

---

[6] In response to a Defense Motion in Limine, the military judge admitted the evidence of coercive control and intimate partner violence and found it to be relevant to "the offenses alleged in the specifications of Charge II [(sexual assaults upon SL)]." Hence, we decline to find that Appellant waived his objection to the instructions as given on this evidence. *Cf. United States v. Davis*, 79 M.J. 329 (C.A.A.F. 2020).

evidence of the prior acts relevant on the intent element of the charged of-fenses.'" *United States v. Hays*, 62 M.J. 158, 164 (C.A.A.F. 2005) (quoting *United States v. McDonald*, 659 M.J. 426, 430 (C.A.A.F. 2004)). "Mil. R. Evid. 404(b) is a rule 'of inclusion rather than exclusion'" that "permits admission of relevant evidence of other crimes or acts unless the evidence 'tends to prove only criminal disposition.'" *United States v. Browning*, 54 M.J. 1, 6 (C.A.A.F. 2000) (quoting *United States v. Simon*, 767 F.2d 524, 526 (8th Cir. 1985), *cert. denied*, 474 U.S. 1013 (1985)).

### 3. Analysis

Appellant challenges the military judge's admission of the evidence of co-ercive control and intimate partner violence, but only as it relates to their ap-plication to the sexual assaults upon SL while she was sleeping. We find the military judge's decision to admit this evidence pursuant to Mil. R. Evid. 404(b) was not "arbitrary, fanciful, clearly unreasonable or clearly erroneous." *United States v. Collier*, 67 M.J. 347, 353 (C.A.A.F. 2009) (citations omitted).

Appellant notes that he was originally charged with multiple acts of sexual assault against SL including ones that allege a sexual act done without SL's consent. He concedes that "the military judge did not err in permitting the Mil. R. Evid. 404(b) evidence as it related to these specifications." He further con-cedes that "a pattern of 'coercive control' would be relevant to a lack of consent." We agree.

The military judge ruled that a fact finder could reasonably find that Ap-pellant committed the proffered prior crimes, wrongs, or acts demonstrating his intent or motive to coercively control KE and SL. That evidence was rele-vant to a lack of consent and could explain a partner's perceived submission to sexual intercourse under the belief that if the person does not comply that something unpleasant would happen to them. Additionally, as the military judge found, this evidence was relevant to potential arguments wherein Appel-lant disregarded the wishes of SL, tried to control her behavior, and became angry when defied. Moreover, the military judge conducted a thorough Mil. R. Evid. 403 balancing test, finding that the probative value of this evidence is not substantially outweighed by the danger of unfair prejudice or any other factor that may be considered under that rule.

The crux of Appellant's challenge, though, is not the admissibility of the evidence in his trial generally, but rather in the military judge not instructing the members that they could not consider this evidence when evaluating Ap-pellant's guilt or innocence with regards to the sexual assaults upon SL while she was sleeping. Appellant argues that evidence of his "coercive control" is unrelated to SL's inability to consent as it was alleged in two of the specifica-tions that she was asleep, not that the acts were done without her consent.

Appellant is generally correct that, under the facts of this case, the evidence of coercive control and intimate partner violence did not directly relate to the factual determination that SL was asleep at the times Appellant penetrated her vagina. However, this does not end the inquiry on whether the evidence admitted in this area was relevant to these specifications. In addition to the reasons referenced by the military judge in his ruling, the evidence adduced at trial rendered this evidence relevant to these specifications.

Trial defense counsel, in relation to these offenses of Appellant having sexual intercourse with SL while she was sleeping, cross-examined SL on the fact that though she said that this was happening, she did not report it to Family Advocacy. When SL testified that she did not remember what she told Family Advocacy, trial defense counsel elicited testimony from the Family Advocacy Treatment Manager that SL reported on her intake form that she was not a victim of forced or coerced sex. By impeaching SL on the fact that she was not reporting these sexual assaults to Family Advocacy, especially when done in the specific context of the sexual assaults upon SL while she was asleep, the reason why SL did not immediately report became particularly relevant in this trial. Therefore, the evidence of coercive control and intimate partner violence was properly considered not only on the sexual assault without consent specifications, but also the sexual assaults upon a sleeping person. Thus, the military judge did not err in either his admission or nor his instructions on the Mil. R. Evid. 404(b) evidence.

## B. Legal and Factual Sufficiency

Appellant challenges the legal and factual sufficiency of his two sexual assault convictions.

### 1. Law

We review issues of legal and factual sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).

"The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Robinson*, 77 M.J. 294, 297–98 (C.A.A.F. 2018) (quoting *United States v. Rosario*, 76 M.J. 114, 117 (C.A.A.F. 2017)). "The term reasonable doubt, however, does not mean that the evidence must be free from conflict." *United States v. Wheeler*, 76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017) (citing *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986)), *aff'd*, 77 M.J. 289 (C.A.A.F. 2018). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted). As a result, "[t]he standard for legal sufficiency involves a very low threshold

to sustain a conviction." *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019) (alteration in original) (citation omitted). The test for legal sufficiency "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *United States v. Oliver*, 70 M.J. 64, 68 (C.A.A.F. 2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1973)).

"The test for factual sufficiency is 'whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses,' [this] court is 'convinced of the [appellant]'s guilt beyond a reasonable doubt.'" *United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000) (quoting *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987)). "In conducting this unique appellate role, we take 'a fresh, impartial look at the evidence,' applying 'neither a presumption of innocence nor a presumption of guilt' to 'make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt.'" *Wheeler*, 76 M.J. at 568 (alteration in original) (quoting *Washington*, 57 M.J. at 399). This court's review of the factual sufficiency of evidence for findings is limited to the evidence admitted at trial. *See United States v. Rodela*, 82 M.J. 521, 525 (A.F. Ct. Crim. App. 2021) (citation omitted), *rev. denied*, 82 M.J. 312 (C.A.A.F. 2022); *United States v. Beatty*, 64 M.J. 456, 458 (C.A.A.F. 2007) (citations omitted).

Appellant was convicted of two specifications of sexual assault upon a person who was asleep, in violation of Article 120, UCMJ, which required the Government to prove for each specification the following elements beyond a reasonable doubt: (1) that, on divers occasions, Appellant committed a sexual act upon SL, to wit: penetrating her vulva with his penis; (2) that Appellant did so when SL was asleep; and (3) that Appellant knew or reasonably should have known that SL was asleep. *See Manual for Courts-Martial, United States* (2019 ed.), pt. IV, ¶ 60.a.(b)(2)(B).

**2. Analysis**

Appellant challenges the legal and factual sufficiency of his two convictions of sexual assault upon SL while she was asleep first by arguing that SL was not actually asleep, but rather that she was pretending to be asleep.

Regarding Specification 2 of Charge II, the offenses occurring in Beavercreek, Ohio, SL's testimony as a whole demonstrates that the first time this happened, she went to sleep, woke up in the night to Appellant penetrating her and she reacted. Specifically, after she awoke and he was penetrating her, SL told him that she was tired and just wanted to sleep. In response and after he had "finished," Appellant became angry that she was not "into it." SL did not know what reaction Appellant wanted from her under the circumstances.

The next time SL awoke to Appellant penetrating her occurred about a week later. Scared of Appellant getting angry at her again, SL did not confront him at that time. She decided that no reaction was better than the wrong reaction, so after she awoke to find Appellant penetrating her, she pretended to be asleep. Appellant did not try to shake her or wake her up. Appellant just continued penetrating SL until he "finished." SL testified that this happened a few other times, but could not say exactly how many times.

Regarding Specification 4 of Charge II, the offenses occurring in Rancho Santa Margarita, California, SL described the first incident where this occurred in this location.

> Trial counsel: When you woke up what was happening?
>
> SL: He was having sex with me.
>
> Trial counsel: Had he already penetrated you by the time you woke up?
>
> SL: I think just starting to.[7]
>
> Trial counsel: Where was he penetrating you, what part of your body?
>
> SL: My vagina
>
> Trial counsel: And what part of his body?
>
> SL: His penis
>
> Trial counsel: At this point you wake up, and what you do (sic)?
>
> SL: I pretended to be asleep.
>
> Trial counsel: Why?
>
> SL: We were fighting and I – I knew what happens when he was mad at me.
>
> . . .
>
> Trial counsel: Had you said between the last time we talked about this and this time, "Hey, any time I'm asleep you can just have sex with me"?
>
> SL: No.
>
> Trial counsel: Is there any other type of agreement that, "Hey, I'll pretend to be asleep and you can just have sex with me"?

---

[7] The military judge instructed the members at trial that "[s]exual act means: (A) the penetration, however slight, of the penis into the vulva or anus or mouth . . . ."

SL: No

Trial counsel: Did this happen more than once when you were in Rancho Santa Margarita?

SL: A few times. Yes.

SL also testified in more detail about another incident of awaking to being penetrated by Appellant after they returned to California from a visit with her mother. SL described Appellant being angry at her for going on the visit but wanted to have sex with SL. At some point, SL went to sleep. She awoke and Appellant was having sex with her. As she had before, after she awoke, she pretended to be asleep as he penetrated her and "finished." SL testified that there was "no point" in confronting Appellant as they had previously discussed SL being tired or having migraines and that conversation "didn't fix anything."

The totality of SL's testimony makes clear that, aside from the first incident, on occasions when SL awoke from her sleep to Appellant penetrating her, she pretended to be asleep. SL's testimony does not support the conclusion Appellant advances here: that on each occasion, SL was awake when Appellant began penetrating her and then pretended to be asleep throughout the penetration until he stopped.

Appellant next argues that SL was not credible and therefore there was no evidentiary support for her allegations. Evidence of SL's credibility, including inconsistent statements and allegations of motives to fabricate, were presented at trial. The members acquitted Appellant of multiple offenses, including each of the sexual assault without consent offenses. Viewing all the evidence offered at trial, the members rationally and reasonably found the essential elements of the offenses beyond a reasonable doubt. Moreover, after taking a fresh, impartial look at the evidence, we ourselves are convinced that the evidence constitutes proof of each required element beyond a reasonable doubt. Therefore, Appellant's convictions for both sexual assault offenses upon SL while she was sleeping are legally and factually sufficient.

## C. Sentence Appropriateness

Appellant argues that his sentence, which included 42 months of confinement and a dismissal, is inappropriately severe.

### 1. Law

We review sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006) (footnote omitted). We may affirm only as much of the sentence as we find correct in law and fact and determine should be approved based on the entire record. Article 66(d), UCMJ, 10 U.S.C. § 866(d). We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offenses, the appellant's record of service, and all

matters contained in the record. *United States v. Fields*, 74 M.J. 619, 625 (A.F. Ct. Crim. App. 2015). While we have significant discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency. *Id.*

In exercising sentence appropriateness review, "[t]he Courts of Criminal Appeals are required to engage in sentence comparison only 'in those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases.'" *United States v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001) (quoting *United States v. Ballard*, 20 M.J. 282, 283 (C.M.A. 1985)). An appellant bears the burden of demonstrating that any cited cases are "closely related" to the appellant's case and the sentences are "highly disparate." *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999). Closely related cases include those which pertain to "co-actors involved in a common crime, servicemembers involved in a common or parallel scheme, or some other direct nexus between the servicemembers whose sentences are sought to be compared." *Id.* If the appellant meets his or her burden to demonstrate closely related cases involve highly disparate sentences, the Government "must show that there is a rational basis for the disparity." *Id.*

### 2. Analysis

Appellant personally asserts that his sentence is unduly severe particularly in comparison to sentences received in closely related cases[8] and also considering that SL was asleep at the time of the offenses. He avers that a sexual assault is subjectively less traumatic in the case of a sleeping victim.

SL stated in her unsworn victim impact statement,

> I continue to go through waves of shock, sadness, surreal numbness, and flashbacks while trying to restart my life. Healing from the trauma of these events requires something larger than an apology, a referral to a support group, a class in breathwork,

---

[8] Regarding sentence comparison, Appellant failed to meet his burden of demonstrating that any cases are closely related to his case and that the sentences are highly disparate; in light of the fact he cites to no specific cases that are closely related. Notwithstanding a failure to demonstrate cases are closely related, we may consider "unrelated cases" as "CCAs typically have 'discretion to consider and compare other [specific] courts-martial sentences when [they are] reviewing a case for sentence appropriateness and relative uniformity.'" *United States v. Behunin*, 83 M.J. 158, 161 (C.A.A.F. 2023) (alterations in original) (quoting *United States v. Wacha*, 55 M.J. 266, 267 (C.A.A.F. 2001)). We have done so and find that Appellant's sentence was appropriate and consistent with relative uniformity.

or time could ever give. There is nothing in this world that will
ever give me back that time or fix these deep wounds.

During the presentencing proceeding, Appellant offered several exhibits highlighting his successes and achievements in the Air Force and education, character letters, personal photographs, and verbal and written unsworn statements.

After carefully considering Appellant, the nature and seriousness of the offenses, the particularized extenuating and mitigating evidence, and all the other matters in the record of trial, we conclude Appellant's sentence, including consideration of the confinement in the aggregate as well as segmented by the military judge as sentencing authority, is not inappropriately severe.

## III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court

14